OPINION OF THE COURT
 

 Levine, J.
 

 [11 The primary issue on appeal in this divorce action is whether the Appellate Division erroneously based both its equitable distribution award of one half of the value of defendant’s law license and his obligation to pay maintenance on the same projected professional earnings.
 
 McSparron v McSparron
 
 (87 NY2d 275, 286) prescribed a rule against such double counting of income. For the reasons that follow, we conclude that the Appellate Division erred and we remit to Supreme Court for further proceedings.
 

 Plaintiff Rochelle Grunfeld and defendant Harold Grunfeld were married in December 1971, while defendant was in the middle of his second year of law school. After graduating, defendant began working as a customs lawyer and later became "a partner in the firm of Mandel & Grunfeld. Plaintiff worked as a school teacher but gave up her professional career when the couple’s first child was born. The Grunfelds purchased a home in Scarsdale and had a second child. In the 1980’s, defendant’s former law firm was dissolved, and defendant started his current firm, of which he is the managing partner.
 

 As defendant’s practice grew, the couple’s lifestyle included imported luxury cars, live-in help, numerous Caribbean and European vacations and membership at a Westchester country club. By the early 1990’s, defendant was earning approximately $1.2 million per year. The Grunfelds, however, began experiencing serious marital difficulties, with defendant spending increasing amounts of time away from home. The parties separated in 1991.
 

 
 *701
 
 In July 1992, plaintiff commenced this action for divorce. Supreme Court, in a comprehensive opinion by the late Justice Lewis R. Friedman (170 Mise 2d 808), dissolved the couple’s marriage by reason of defendant’s abandonment of plaintiff, awarded plaintiff custody of the child still living at home and ordered defendant to pay child support. The court also ordered defendant to pay maintenance of $15,000 per month until the sale of the marital home one year after the younger child was to enter college, in 2000. Thereafter, maintenance was to be reduced to $8,500 per month.
 

 Before determining the equitable distribution of the marital assets, Supreme Court addressed a number of issues in connection with the valuation of defendant’s legal practice and law license. The court valued defendant’s practice as of the date of commencement of the matrimonial action, not the date of trial. Using the “excess earnings method”
 
 (see,
 
 Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:5, at 276; Kelly,
 
 Sharing a Piece of the Future Post-Divorce: Toward a More Equitable Distribution of Professional Goodwill,
 
 51 Rutgers L Rev 569, 610-612), the court first determined the amount that defendant actually earned in excess of “reasonable compensation,” the amount paid to an attorney of similar age and background in the same geographic area without any ownership interest in a law practice. After subtracting taxes and the income theoretically derived from defendant’s share of the firm’s tangible assets (“return on equity”), by agreement of the parties, the resulting amount was capitalized using a multiple of three. Then, defendant’s interest in the firm’s tangible assets was added to the capitalized earnings to arrive at defendant’s interest in his practice, which Supreme Court found to be $2,581,760.
 

 In response to our then recent decision in
 
 McSparron (supra),
 
 Supreme Court also made a determination of the value of defendant’s license to practice law for equitable distribution purposes. The court first computed the value of the “bare license,” the present value of the difference between the average earnings of a first-year associate at a law firm and a person holding an undergraduate degree, for the remainder of defendant’s work-lifetime, with an adjustment to take into consideration the possibility of defendant’s death before reaching 65, his anticipated age at retirement. Because the parties did not marry until defendant was halfway through law school, only one half of the bare license was a marital asset. Thus, its value was multiplied by a 50% “coverture fraction.”
 

 
 *702
 
 Next, the court added the “enhanced earnings potential” created by the license
 
 (see, McSparron v McSparron, supra,
 
 at 286-287). To avoid double counting, since defendant’s income in excess of “reasonable compensation” had already been considered in determining the value of defendant’s interest in the practice, the court excluded that portion of defendant’s future earnings from consideration
 
 (see,
 
 Scheinkman,
 
 op. cit.,
 
 at 299-304). Thus, the enhanced earnings attributable to the license alone were the difference between reasonable compensation and the earnings of a first-year associate. Again, the court calculated the present value of these earnings from the commencement date until the date of defendant’s expected retirement, taking actuarial factors into account. The result was then reduced by 7% “to reflect the premarital, separate property component of that figure” (170 Misc 2d, at 819). The sum of the license’s bare value and enhanced earnings potential was found to be $1,547,000.
 

 Thus, Supreme Court determined the value of both defendant’s law practice and license by calculating the current worth of different components of defendant’s projected future income of $1.2 million per year. To the extent that these “assets” were acquired during the marriage, they were correctly considered to be available for equitable distribution.
 

 Supreme Court next set out to avoid double counting the same anticipated future income stream in making the determination of the amount of maintenance and in fixing the distributive award of the law license
 
 (see, McSparron v McSparron, supra,
 
 at 286). The court specifically recited that it had considered all of defendant’s future income in setting the maintenance award. It noted that the methodology of determining the value of defendant’s license was based on the earnings differential between reasonable compensation and the income of a nonlicensed college graduate. The court then explained that it would violate the
 
 McSparron
 
 rule against double counting to actually award one half the value of the license, since the foregoing earnings differential upon which it was based had already been considered in fixing the award of maintenance.
 

 “Since wife is to receive 50% of the license value, an award to the extent of one half of the earnings differential would clearly be duplicative. The maintenance award here, including the reduced amount after the sale of the house, clearly exceeds that figure. Alternatively the court could reduce the
 
 *703
 
 maintenance award to present value * * * and compare that figure to 50% of the ‘license’ value. The numbers in the case still show that the maintenance award would exceed the distribution of the ‘license’ ” (170 Mise 2d, at 821).
 

 To avoid giving plaintiff two separate awards derived from the same stream of future income, the court thus excluded the license from the marital assets in determining the distributive award.
 

 Supreme Court distributed 50% of the remainder of defendant’s assets. Because it could not actually distribute half of his law practice, it ordered defendant to pay plaintiff a sum of money equal to half the value of the practice, to be paid in amounts no less than $250,000 per year
 
 (see,
 
 Domestic Relations Law § 236 [B] [5] [e]). No interest was ordered to be paid on any unpaid balance of the distributive award “if the amounts due are paid in a timely fashion.”
 

 The Appellate Division modified (255 AD2d 12), holding that one half the value of defendant’s professional license, $773,500, should also have been distributed to plaintiff. The court held that the reduction of maintenance from $15,000 to $8,500 per month should begin, following full payment of the distributive award, not following the sale of the marital residence, but it did not otherwise adjust the maintenance award. The Appellate Division also ordered defendant to pay plaintiff interest on the unpaid balance of the distributive award at the statutory rate. We granted leave and now modify, because we conclude that the Appellate Division double counted defendant’s income in ordering that plaintiff should receive both undiminished maintenance and the full distributive award of one half the value of plaintiff’s law license.
 

 Analysis
 

 In
 
 O’Brien v O’Brien
 
 (66 NY2d 576), this Court ruled that, to the extent that it is acquired during marriage, a professional license is marital property subject to equitable distribution
 
 (id.,
 
 at 584). In addressing the issue of valuation, we held that “[t]he trial court retains the flexibility and discretion to structure the distributive award equitably * * * and, once it has received evidence of the present value of the license and the working spouse’s contributions toward its acquisition and considered the remaining factors mandated by the statute
 
 (see,
 
 Domestic Relations Law § 236 [B] [5] [d] [1]-[10]), it may then make an appropriate distribution of the marital property
 
 *704
 
 including a distributive award for the professional license
 
 if such an award is warranted” (id.,
 
 at 588 [emphasis supplied]).
 

 In
 
 McSparron v McSparron (87
 
 NY2d 275,
 
 supra),
 
 we reaffirmed the holding of
 
 O’Brien,
 
 under which “[t]he value of a newly earned license may be measured by simply comparing the average lifetime income of a college graduate and the average lifetime earnings of a person holding such a license and reducing the difference to its present value”
 
 (id.,
 
 at 286). Moreover,
 
 McSparron
 
 explicitly rejected the theory that the license eventually “merges” with and has no separate value apart from a professional practice
 
 (id.,
 
 at 282-285). “Even after the licensee has had the time and opportunity to exploit the license and to realize a portion of the enhanced earning potential it affords, the license itself retains some residual economic value, although in particular cases
 
 it may be nominal” (id.,
 
 at 285-286 [emphasis supplied]).
 

 McSparron
 
 held that “where the licensee has already embarked on his or her career and has acquired a history of actual earnings * * * [0’Brien‘s] theoretical valuation method must be discarded in favor of a more pragmatic and individualized analysis based on the particular licensee’s remaining professional earning potential” (id.). We also warned that “care must be taken to ensure that the monetary value assigned to the license does not overlap with the value assigned to other marital assets that are derived from the license such as the licensed spouse’s professional practice” (id., at 286). In this case, Supreme Court clearly was following McSparron’s teaching by assigning separate and nonoverlapping values for the practice and the license. Because the parties have not challenged the trial court’s methodology for doing so on this appeal, no issues related to the valuation of the practice or the license are before us.
 

 Most significantly for the case at hand,
 
 McSparron
 
 also cautioned lower courts to “be meticulous in guarding against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses”
 
 (id.).
 
 To allow such duplication would, in effect, result in inequitable, rather than equitable, distribution. In contrast to passive income-producing marital property having a market value, the value of a professional license as an asset of the marital partnership is a form of human capital dependant upon the future labor of the licensee. The asset is totally indistinguishable and has no existence separate from the projected professional earnings from which it is derived. To the extent, then,
 
 *705
 
 that those same projected earnings used to value the license also form the basis of an award of maintenance, the licensed spouse is being twice charged with distribution of the same marital asset value, or with sharing the same income with the nonlicensed spouse.
 

 Here, as Supreme Court’s opinion acknowledges, in setting the level of maintenance, it did include as part of defendant’s earning capacity the projected earnings derived from his professional license. As previously discussed, however, the court also used the same earnings attributable to the law license to determine the present value of the license as a marital asset. To comply with
 
 McSparron,
 
 Supreme Court had to reduce either the income available to make maintenance payments or the marital assets available for distribution, or some combination of the two. Once a court converts a specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout
 
 (see,
 
 Turner, Equitable Distribution of Property § 6.21, at 328 [2d ed 1999 Supp]; Florescue,
 
 The Recent “Grunfeld” Decision,
 
 NYLJ, May 10, 1999, at 3, col 3; Note, White,
 
 Diploma Dilemma: The Possibility of Double Recovery From Multiple Awards of the Licensed Spouse’s Future Earning Capacity,
 
 35 U Louisville J of Fam L 393, 412-413).
 

 Where license income is considered in setting maintenance, a court can avoid double counting by reducing the distributive award based on that same income
 
 (see,
 
 Domestic Relations Law § 236 [B] [5] [d] [5]). The necessity of this reduction was recognized in
 
 Wadsworth v Wadsworth
 
 (219 AD2d 410). “ ‘Not to do so would involve a double counting of the same income’ ”
 
 (id.,
 
 at 415;
 
 see also, Reczek v Reczek,
 
 239 AD2d 867;
 
 Jafri v Jafri,
 
 176 Misc 2d 246, 252;
 
 Procario v Procario,
 
 164 Misc 2d 79, 87-88). One advantage of this method is that the maintenance award may be adjusted in the future if the licensed spouse’s actual earnings turn out to be less than expected at the time of the divorce
 
 (see,
 
 Domestic Relations Law § 236 [B] [9] [b];
 
 O’Brien v O’Brien, supra,
 
 at 591 [Meyer, J., concurring]; Scheinkman,
 
 op. cit,
 
 at 303; Oldham, Divorce, Separation and the Distribution of Property § 9.02 [1], at 9-11). This method is also consistent with our observation that in particular cases the value of the license “may be nominal”
 
 (McSparron v McSparron, supra,
 
 at 286).
 

 On the other hand, there may be cases where it is more equitable to avoid double counting by reducing the maintenance award
 
 (see,
 
 Domestic Relations Law § 236 [B] [6] [a] [1]). Where
 
 *706
 
 the license is likely to retain its value in the future but the nonlicensed spouse may only be entitled to receive maintenance for a short period of time, it may be fairer actually to distribute the value of the license as marital property rather than to take the license income into consideration in determining the licensed spouse’s capacity to pay maintenance
 
 (see, See-man v Seeman,
 
 251 AD2d 487, 488;
 
 Vainchenker v Vainchenker,
 
 242 AD2d 620, 621; Turner,
 
 op. cit,
 
 at 327-328; Orenstein and Skoloff, When a Professional Divorces: Strategies for Valuing Practices, Licenses, and Degrees, at 71-72).
 

 Here, the Appellate Division held that plaintiffs share of the value of defendant’s law license should be fully distributed as a marital asset, but it made no corresponding adjustment in the maintenance award. The Court’s reasoning for not doing so was that
 

 “defendant’s future earnings are expected to exceed $1 million yearly, and he is possessed of
 
 other resources,
 
 the income from which could
 
 provide an additional source for at least a portion of the main
 
 tenance: a substantial stock portfolio, the proceeds of successful litigation against his former law partner, and limited partnership interests” (255 AD2d, at 21 [emphasis supplied]).
 

 To be sure, to the extent that the maintenance award here was based on income from “other resources” than that attributable to defendant’s licensed practice of law, there would be no double counting problem to be avoided by a corresponding reduction of the distributive award for plaintiffs share of the value of the license.
 

 Here, however, the Appellate Division flatly based its ruling in part on the fact that “defendant’s future earnings” — which only could be expected to come from his own professional endeavors — were likely “to exceed $1 million yearly.” Additionally, the Court apparently recognized that income from other resources could only be expected to support “a portion of the maintenance.” Therefore, on the face of the Appellate Division’s decision, in ordering full distribution of plaintiffs share of defendant’s license without any adjustment of maintenance, the Court engaged in double counting of income. This is inconsistent with
 
 McSparron.
 
 Thus, that portion of its order cannot be affirmed.
 

 On the other hand, Supreme Court’s decision does not expressly explain how the court took into account defendant’s
 
 *707
 
 income from outside sources in determining the amount that the license distribution award should be reduced to avoid double counting. There is no double counting to the extent that maintenance is based upon spousal income which is not capitalized and then converted into and distributed as marital property. Thus, if Supreme Court fixed maintenance on the basis of defendant’s income from all sources (adjusting for any appropriate setoffs), the proportionate share of maintenance attributable to defendant’s unearned income should have been excluded from the court’s calculation reducing the license value by the value of maintenance. The record is not definitive as to whether Supreme Court made this adjustment in comparing maintenance to one half the earnings upon which the license value was derived. For that reason, we are unable to correct the Appellate Division’s duplicative use of the same income merely by reinstating Supreme Court’s order. Rather, we remit this aspect to Supreme Court to recalculate the required reduction in the license distributive award in accordance with
 
 McSparron
 
 and this opinion.
 

 Defendant raises two other issues which may be disposed of without extended discussion. The first is whether the Appellate Division abused its discretion as a matter of law by ordering defendant to pay interest on the unpaid portion of the distribution. Since defendant had only paid a single $250,000 installment over several years, the Appellate Division quite properly could have concluded that defendant had not been paying the amounts due “in a timely fashion,” as assumed by Supreme Court, and imposed an obligation to pay interest.
 

 The remaining issue is whether there was an abuse of discretion as a matter of law in valuing the practice at the date the divorce action was commenced, as both of the courts below did, rather than at the date of trial. Defendant’s practice is not the type of asset yielding unearned income which is likely to change in value between these two dates. Courts have discretion to value “active” assets such as a professional practice on the commencement date, while “passive” assets such as securities, which could change in value suddenly based on market fluctuations, may be valued at the date of trial
 
 (see,
 
 Domestic Relations Law § 236 [B] [4] [b]). “Such formulations, however, may prove too rigid to be useful in particular cases. Thus, they should be regarded only as helpful guideposts and not as immutable rules of law”
 
 (McSparron v McSparron, supra,
 
 at 288). Here, the trial court correctly used the active/passive distinction as a “helpful guidepost.” Although defendant presented
 
 *708
 
 some evidence that his practice had become less profitable as a result of changes in customs laws and the loss of clients, there is ample support for the lower courts’ finding that defendant’s professional practice had not undergone the type of radical alteration subsequent to the commencement of the action that would warrant a valuation of the practice at the time of trial
 
 (cf., LaBarre v LaBarre,
 
 251 AD2d 1008).
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur; Chief Judge Kaye taking no part.
 

 Order modified, etc.