■ PETER R. DOUGLAS, Appellant, v CAMILLE J. DOUGLAS, Respondent. [722 NYS2d 87] —Mugglin, J. Appeal from a judgment of the Supreme Court (Teresi, J.), ordering, *inter alia,* equitable distribution of the parties' marital property, entered November 22, 1999 in Albany County, upon a decision of the court.

The parties to this divorce action were married March 10, 1984 and have two sons, who were 13 and 10 years of age at the time of trial. On the date of marriage, plaintiff was a partner in the New York City law firm of Davis, Polk & Wardwell and defendant was a corporate vice-president with Olympia & York Equity Corporation, a real estate company.

Defendant was continuously employed until 1994 when she and the children moved to the Town of Rensselaerville, Albany County, to reside at the family farm. This action for divorce was instituted July 6, 1998, which is also the assigned valuation date.

As a result of numerous stipulations, agreement was reached concerning custody, visitation, support, maintenance, educational expenses, counsel fees and certain issues of equitable distribution, including disposition of real property, vehicles and other personal property, and certain deferred compensation plans. The issues which the parties were unable to resolve, and which were therefore decided by Supreme Court, were the valuation of the appreciation of plaintiff's interest in his law partnership during the marriage, the value of plaintiff's non-qualified, unfunded retirement benefits which accrued during the marriage, the parties' respective shares of these assets, and the amount of life insurance plaintiff would be required to carry to fund his agreed maintenance and child support payments in the event of his untimely death. Supreme Court determined the value of the marital share of the appreciation of his partnership interest to be $1,860,000, the marital share of his retirement benefits to be $446,050, that defendant's share of these assets was 50%, and that plaintiff must maintain $1,000,000 of life insurance for the benefit of the children until such time as each attains the age of 21 years, or becomes sooner emancipated, and $480,000 of life insurance for the benefit of defendant, reducible at plaintiff's option in the amount of annual maintenance of $120,000, provided it was paid. On this appeal, plaintiff has not addressed the issue of the life insurance and we therefore deem it to be abandoned (see, Transamerica Commercial Fin. Corp. v Matthews of Scotia, 178 AD2d 691, 692 n 1).

Plaintiff first argues that Supreme Court's pretrial rulings, comments during the trial and final decision demonstrate such pervasive hostility toward him and bias in favor of defendant that the judgment should be reversed or, at a minimum, that this Court not give deference to the findings of credibility or qualifications of the witnesses which were made. Of course, all judges are required to perform their duties without bias or prejudice and to conduct trials in a patient, dignified and courteous manner (see, 22 NYCRR 100.3 [B] [3], [4]). Based on our review of the record we do not agree that Supreme Court was openly hostile and prejudiced against plaintiff and biased in favor of defendant. On the contrary, we perceive a busy court's attempts to keep the respective parties focused upon a

succinct presentation of evidence relevant to the issues to be decided. The court had the power to do this in order to insure an orderly and expeditious trial. Plaintiff's complaints do not demonstrate bias or hostility affecting his due process right to a fair trial or which would require a trial de novo of the issues (*see, Delcor Labs. v Cosmair, Inc.*, 263 AD2d 402, 403, *lv denied* 94 NY2d 761; *People v Hernandez [Richard]*, 137 AD2d 560, 561). Moreover, we note that plaintiff does not specifically appeal the substance of any ruling and he made no request that Supreme Court recuse itself during the proceedings.

We next address plaintiff's arguments with respect to Supreme Court's determination of the increase in value of his partnership interest during the term of the marriage. In this regard, we first observe that plaintiff's expert, working solely from the partnership agreement, determined his interest in the partnership using a withdrawal analysis and a death analysis. Under the former, his expert valued the appreciation of plaintiff's interest during the marriage at $719,000, after taxes, and $567,481 after adjustment for passive appreciation. Under the death analysis, he placed the after-tax value at $1,082,566, after deducting passive appreciation.

Utilization of a death benefit provision in a partnership agreement is an acceptable method of valuation of an interest in a law partnership (*see, Harmon v Harmon*, 173 AD2d 98, 106), but "[t]he valuation of a marital asset, particularly an intangible asset such as an interest in a professional partnership, must be founded in economic reality" (*id.*, at 107). Here, plaintiff's expert conceded that his methodology had, to his knowledge, never been accepted by any court, that he had never used that method in valuing any other business, that the death benefit was not available to plaintiff on demand, that the withdrawal benefit is artificially low to create a "financial disincentive" for partners to withdraw and compete with the firm, that his death benefit value was more accurate than his withdrawal value and that the "excess earnings" approach was a more common method of valuing a practice.

Defendant's expert, in determining the value that was adopted by Supreme Court of $1,860,000, did employ the excess earnings method. One of the essential components of this method of valuation is the determination of the level of "reasonable compensation" of a similarly situated attorney who is a nonowner of the firm. Plaintiff asserts that the determination of reasonable compensation by defendant's expert is unreasonably low, thus inflating the excess earnings component of the formula and resulting in a higher valuation. Defendant's

expert, relying upon his previous experience in valuing the interests of partners in other large New York City law firms, ascertained the compensation level of senior associates in such firms engaged in the same area of practice as plaintiff and adjusted their compensation upward to reflect the higher hourly billing rate attributable to him, thus more accurately reflecting reasonable compensation for a nonpartner possessing plaintiff's experience and skill levels. In contrast, plaintiff's expert, after first expressing his inability to make such an evaluation, later opined that the level of reasonable compensation would be $1,100,000 and that he arrived at this figure by "just backing into it." Moreover, Supreme Court correctly rejected, as irrelevant, plaintiff's offer of evidence concerning the salaries of partners who had withdrawn from his firm to pursue careers in different fields as general counsel to a major corporation and a major brokerage firm.

The Court of Appeals has stated that "there is no uniform rule for fixing the value of a going business for equitable distribution purposes" and "valuation is an exercise properly within the fact-finding power of the trial courts, guided by expert testimony" (*Burns v Burns*, 84 NY2d 369, 375). Here, since the determination of value rests principally on the assessment of the credibility of the expert witnesses and the valuation techniques employed, and is within the range of the values presented, Supreme Court's determination will not be disturbed (*see, Ferraro v Ferraro*, 257 AD2d 596, 598, *lv denied* 93 NY2d 803).

Next, plaintiff argues that his ability to collect from the unfunded, nonqualified retirement plan is too speculative to be valued as a marital asset. In support of his argument, plaintiff points out that since the plan is unfunded, payments are dependent upon the partnership remaining profitable and that to be eligible, one must be a partner for 10 years, be 50 years of age, not leave to compete with the partnership in another firm, and retire. Since plaintiff was not 50 years of age on the date that the action was commenced, his expert attempted no valuation of his interest, asserting that it was valueless. To the contrary, nonvested pensions are subject to equitable distribution (*see, Burns v Burns, supra*, at 376) and the uncertainty associated with the fulfillment of the conditions precedent to the receipt of such nonvested pensions does not present a significant impediment to a fair and realistic distribution of this type of asset (*see, id.*, at 376).

Defendant's expert, on the other hand, noted that no partner had left plaintiff's firm to work for a competing firm in over 50

years and that historically the partnership was profitable enough to make payments called for by the plan to retired partners. Moreover, the expert assumed, and the record discloses no evidence to the contrary, that plaintiff would continue as a partner (in fact, he has more than 10 years as a partner in the firm and is now age 50), and he valued plaintiff's interest in the retirement plan at $412,700, $460,400 or $479,400, depending on whether plaintiff retired at age 50, 56 or 62. Given the uncontroverted evidence of valuation, Supreme Court did not abuse its discretion by accepting the valuation ascribed by defendant's expert (*see*, *Ferraro v Ferraro*, *supra*, at 598). Lastly, there is no merit to plaintiff's contention that the *Majauskas* formula (*see*, *Majauskas v Majauskas*, 61 NY2d 481) should have been employed by Supreme Court since this formula need not be used where, as here, "a lump-sum payment discounted for present value" may be made to effectuate distribution of pension benefits (*Mullin v Mullin*, 187 AD2d 913, 915; *see*, *Majauskas v Majauskas*, *supra*).

Next, plaintiff argues that Supreme Court violated the "double counting" rules articulated in *McSparron v McSparron* (87 NY2d 275) and *Grunfeld v Grunfeld* (94 NY2d 696) because it failed to consider his maintenance and child support obligations when awarding 50% of his practice appreciation and future unfunded retirement benefits to defendant. We find this argument unpersuasive. As noted above, Supreme Court accepted the excess earnings method which this Court has found appropriate for the valuation of law practices (*see*, *White v White*, 204 AD2d 825, 826, *lv dismissed* 84 NY2d 977). Using that methodology, defendant's expert first subtracted the sum of $538,000 from plaintiff's earnings stream. This adjustment represented reasonable compensation for a senior associate (nonpartner) possessing plaintiff's skills and was excluded from the calculation of the value of the appreciation of plaintiff's law practice during the marriage. Moreover, this sum was not used as part of a formula to evaluate plaintiff's law license, a premarital, separate property asset. "There is no double counting to the extent that maintenance is based upon spousal income which is not capitalized and then converted into and distributed as marital property" (*Grunfeld v Grunfeld*, *supra*, at 707). Since the $538,000 was not so capitalized, converted and distributed as a marital asset, it remains available for

plaintiff to make his stipulated maintenance payments without impacting the rules prohibiting double counting.*

Lastly, we address plaintiff's claim that Supreme Court failed to set forth its rationale concerning an award of 50% of these assets to defendant requiring either a reversal or that this Court review the record and substitute its own decision on this issue. Domestic Relations Law § 236 (B) (5) (g) requires a trial court to "set forth the factors it considered and the reasons for its decision and such may not be waived by either party or counsel." Contrary to plaintiff's contention, we find that Supreme Court's decision and two judgments, totaling 10 pages, and its specific rulings on proposed findings of fact and conclusions of law, which are in excess of 40 pages, are more than adequate to meet the requirements of the statute (cf., Capasso v Capasso, 119 AD2d 268). Specifically, given the length of this marriage, the detailed findings concerning the direct contributions and indirect contributions of defendant as spouse, parent, substantial wage earner and homemaker to the enhancement of plaintiff's career provide ample basis for appellate review of the percentage of the assets awarded to defendant (see, Domestic Relations Law § 236 [B] [5] [d] [6]).

We have considered the balance of plaintiff's contentions and find them to be without merit.

Cardona, P. J., Peters, Spain and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

* Although plaintiff argues the applicability of the double counting rule to the child support paid herein, we find no merit to that contention.