[745 NYS2d 1]

Cohoes Realty Associates et al., Appellants-Respondents, v Lexington Insurance Co., Respondent, and Marshall & Sterling Upstate Inc., Respondent-Appellant and Third-Party Plaintiff-Appellant-Respondent. New England Risk Specialists, Inc., Third-Party Defendant-Respondent-Appellant.

First Department, March 14, 2002

---

## APPEARANCES OF COUNSEL

*Mark L. Amsterdam* and *Edward H. Pomeranz* of counsel (*Alan S. Rafterman* and *Lawrence D. Bernfeld* on the brief; *Amsterdam & Lewinter,* and *Graubard Mollen & Miller,* attorneys), for appellants-respondents.

*Cornelius A. Mahoney* of counsel (*Garth S. Wolfson* on the brief; *Mahoney & Keane, LLP,* attorneys), for Lexington Insurance Co., respondent, and New England Risk Specialists, Inc., third-party defendant-respondent-appellant.

*Kenneth Mauro* of counsel (*Timothy R. Capowski* on the brief; *Mauro Goldberg & Lilling LLP* and *Tell, Cheser & Breitbart, LLP,* attorneys), for Marshall & Sterling Upstate, Inc., defendant-respondent-appellant/third party plaintiff-respondent-appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

Plaintiff Cohoes Realty Associates (Cohoes) is the owner of a real estate complex consisting of several buildings, one of which was a vacant factory (Mill No. 2). Plaintiff Lana Realty Co. is the holder of the mortgage on the property. Cohoes and Lana were coinsured under a one-year, all-risk property insurance policy (the Policy) issued by defendant Lexington Insurance Co. (Lexington), effective October 31, 1994. Defendant and third-party plaintiff Marshall & Sterling Upstate Inc. (M&S), a retail insurance broker, obtained the Policy on behalf of Cohoes through third-party defendant New England Risk Specialists, Inc. (NERS), a wholesale insurance broker. provided "this insurance will be automatically suspended at the involved location if you fail to notify us immediately when you: 1. Know of any suspension or impairment in the protective safeguards; or 2. Fail to maintain the protective safeguards over which you have control in complete order."

A fire destroyed Mill No. 2 on October 9, 1995. Lexington denied coverage on the ground that the building did not have a functioning sprinkler system. In the action that followed, plaintiffs alleged, among other things, that Lexington had been on notice by M&S and pursuant to an investigation of the property performed on Lexington's behalf of the absence of a functioning sprinkler system at Mill No. 2, and thus should be estopped from denying coverage.

In November 1996, in response to a discovery demand served by plaintiffs in July 1996, Lexington denied that it possessed a property report prepared on Mill No. 2 by NERS or any related documents. In opposition to plaintiffs' February 1997 motion for summary judgment against Lexington and M&S, Lexington submitted the affidavit of Peter MacDonald, the NERS employee who obtained the Policy from Lexington. In his affidavit, MacDonald stated that NERS was unaware that Mill No. 2 lacked functioning sprinklers and, therefore, that NERS never informed Lexington of any such lack. An affirmation of one of Lexington's attorneys also attested to Lexington's asserted ignorance of the absence of working sprinklers in Mill No. 2.

In an order entered December 1, 1997 (the December 1997 Order), the Supreme Court denied plaintiffs' summary judgment motion against both Lexington and M&S. However, after searching the record, the court sua sponte dismissed the complaint against Lexington based upon its conclusion that there was no evidence in the record establishing that Lexington knew or should have known the sprinklers in Mill No. 2 were not working. In May 1998, this Court affirmed the December 1997 Order in its entirety (250 AD2d 420, *lv dismissed* 92 NY2d 1001).

Meanwhile, discovery during M&S's third-party action against NERS revealed a detailed inspection report, dated January 24 and 25, 1995, prepared by an engineering company hired by NERS on behalf of Lexington approximately nine months before the fire. The report clearly stated that Mill No. 2 did not have a functioning sprinkler system. In addition, NERS's employee MacDonald, contradicting his prior sworn assertion that NERS was unaware of the lack of a working sprinkler system in Mill No. 2, admitted in a deposition that the application for insurance he received from M&S in August 1994 included an excerpt from a June 1993 inspection report, prepared by the same engineering company that produced the January 1995 report, which disclosed that Mill No. 2 lacked a functioning sprinkler system. MacDonald further testified that

he was fully authorized to and did evaluate and approve plaintiffs' insurance application on behalf of Lexington.

On the basis of this newly discovered evidence, plaintiffs moved pursuant to CPLR 5015 (a) (2) to renew their motion for summary judgment against Lexington. In an order dated February 4, 1999 (the February 1999 Order), the Supreme Court vacated its December 1997 Order and granted summary judgment to plaintiffs, finding this time that Lexington had been on notice, through its agent NERS, that Mill No. 2 did not have a working sprinkler system. Having made this determination, the court also granted NERS's cross motion dismissing the third-party complaint against it.

Lexington and M&S appealed. This Court reversed the motion court's February 1999 Order in its entirety (266 AD2d 11, *lv dismissed* 94 NY2d 875) based upon the May 1998 order affirming the motion court's December 1997 Order. In reversing, we noted what appeared from the record to be plaintiffs' lack of diligence in pursuing discovery against NERS, and remanded the case for further proceedings.

On remand, plaintiffs moved pursuant to CPLR 5015 (a) (3) to vacate the December 1997 Order on the grounds that it had been obtained by reason of fraud, misrepresentation or other misconduct by Lexington. In an order entered May 18, 2000, the motion court determined that it was precluded from granting plaintiffs' motion by virtue of this Court's prior affirmance of the December 1997 Order granting summary judgment to Lexington.

Lexington now argues that, like the motion court, we are precluded from reconsidering our prior determination. This Court is not so precluded.

As an initial matter, neither Lexington nor any other party to a litigation holds a vested right to have a court perpetuate its mistakes.

Moreover, an appellate court has inherent and plenary authority to exercise its discretion to review a previous order obtained by means of misconduct by a party toward the court (*see Matter of Lockett v Juviler*, 65 NY2d 182, 186, citing *Furman v Furman*, 153 NY 309, and *Matter of Holden*, 271 NY 212, 218; *Oppenheimer v Westcott*, 47 NY2d 595, 604; *Belesi v Connecticut Mut. Life Ins. Co.*, 272 AD2d 353, 354, *lv dismissed* 95 NY2d 886; *Peterson v Melchiona*, 269 AD2d 375, 375-376). This authority is rooted in the notion that a party successful in obtaining an order by means of misconduct does not render a

court powerless to undo that order when the truth is brought to light. Neither "law of the case" nor stare decisis is applicable in such instances. These principles generally provide courts with the power to prevent unnecessary relitigation of claims decided on the merits. They are not intended to shelter parties who have engaged in acts of misconduct or misrepresentation to the courts.

The record in this case makes it clear that NERS was responsible for most of the work related to obtaining the insurance policy issued by Lexington. NERS received, evaluated, and approved Cohoes' application for insurance. In addition, NERS undertook an independent assessment of Mill No. 2, embodied in the engineering report. Lexington provided NERS with the express authority to evaluate the property to be insured and to approve or deny the policy on its behalf. Nevertheless, Lexington not only failed to comply with plaintiffs' request to produce the engineering report, but submitted affirmations from its attorney and Mr. MacDonald contradicting the damaging information contained in the report. That the report was in the physical possession of NERS, as Lexington claims, is irrelevant. NERS was Lexington's agent for purposes of evaluating and approving plaintiffs' application for insurance. Lexington cannot hide behind its agent to avoid producing documents relevant to plaintiffs' claims. In the circumstances presented, Lexington's failure to produce the report along with its representations about its knowledge of the absence of operable sprinklers on Mill No. 2 warrants the granting of plaintiffs' motion to vacate.

It is clear, in retrospect, that Lexington's misconduct, not plaintiffs' lack of due diligence, was the primary cause of plaintiffs' failure to obtain the report sooner.

In light of the rule against successive motions (*see Batac v Associated Sec. Specialists*, 183 AD2d 678, citing *Graney Dev. Corp. v Taksen*, 62 AD2d 1148, 1149) as well as the factual revelations, NERS's motion was properly denied and reconsideration is not warranted.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered May 18, 2000, which denied the motion of plaintiffs Cohoes Realty Associates and Lana Realty Co. to vacate the court's prior order of December 1, 1997, denied in part and granted in part plaintiffs' motion to amend their complaint, and denied the motion of third-party defendant New England Risk Specialists, Inc. to dismiss all claims against it, should be modified, on the law and the facts,

to the extent of granting plaintiffs' motion to vacate, reinstating the complaint as against Lexington and remanding the case for consideration of the request for leave to amend and otherwise affirmed, with one bill of costs to plaintiffs Cohoes and Lana, payable by defendant Lexington.

MAZZARELLI, J.P., ANDRIAS, SAXE and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered May 18, 2000, modified, on the law and the facts, to the extent of granting plaintiffs' motion to vacate the court's prior order of December 1, 1997, reinstating the complaint as against Lexington and remanding the case for consideration of the request for leave to amend and otherwise affirmed, with one bill of costs to plaintiffs, payable by defendant-respondent Lexington.