OPINION OF THE COURT
Robert A. Ross, J.
In addition to a careful review of the motion papers before me, I also ordered and heard oral argument by respective counsel. The novel issue presented herein is whether the *205 income from a distributive award for enhanced earnings capacity should be attributed to the nontitled spouse and be reduced from the income of the titled spouse. For the purposes of this court’s proper computation and determination of each of the parties’ respective child support obligations, as mandated by Domestic Relations Law § 240 (1-b) (Child Support Standards Act), this court determines that it must redistribute the income accordingly.
This court is “mindful of the precedential, and consequential future, effects of [this determination] ” (see, Lauer v City of New York, 95 NY2d 95, 100). But a different determination of this issue, by this court, will run afoul of the conceptual guidance to avoid “double dipping”[1] that has been provided to IAS matrimonial trial courts throughout New York State by the seminal determination of the Court of Appeals in McSparron v McSparron (87 NY2d 275) and Grunfeld v Grunfeld (94 NY2d 696).
Grunfeld (supra), admonishes that once the trier of fact converts a specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout. McSparron (supra) reminds us to be meticulous in guarding against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses.
The available authority on the issue before me is limited.
In Rochelle G. v Harold M.G. (170 Misc 2d 808, 820 n [Sup Ct, NY County]), the late Justice Friedman wrote: “The court rejects Husband’s expert’s implied analysis that this language in McSparron (supra) should also apply to child support. This court believes that the Court of Appeals was carefully using terms of art in its decision and the omission of reference to child support was intentional and not, as suggested, a mere oversight.”
But whether or not the Court of Appeals’ omission of the child support consideration in McSparron was intended, it is axiomatic that, in the absence of authority from the Court of Appeals to the contrary, I am bound by the decisions of the Appellate Division. (See, Chase Manhattan Bank v New Hampshire Ins. Co., 193 Misc 2d 580 [Sup Ct, NY County, Gammer *206 man, J.]; see, also, Cohoes Realty Assoc. v Lexington Ins. Co., Sup Ct, NY County, May 18, 2000, Gammerman, J., Index No. 502594/96, mod on other grounds 292 AD2d 51.) I have examined the available Appellate Division cases, and within these well reasoned and important decisions, there is no tacit or express guidance as to the issue before me. (See, Sodaro v Sodaro, 286 AD2d 434;[2] see, also, Douglas v Douglas, 281 AD2d 709.)[3]
The pragmatic legal and public policy concerns presented by the instant application are significant.
The duplication of awards, and the reutilization of the already converted income stream, clearly resurfaces when “enhanced earnings” presents itself as another award of equitable distribution without appropriate adjustment of income for computation of the child support obligations between the parties. Succinctly stated, “Once income has been ‘converted’ into an asset and distributed, it is no longer fully available to the titled spouse as a source from which to pay the maintenance award. Logic dictates that neither is it fully available to the titled spouse as a source of child support payments either” (see, Tippins, Matrimonial Practice, Part 1: Child Support as a Duplicative Award, NYLJ, Jan. 15, 2003, at 3, col 1). Enhanced earnings, as a distributive award, reflects a redistribution of income from the titled parent to the nontitled parent. “Though no longer fully available to the titled spouse due to the redistribution, it remains fully present for a child support award.” (See, Tippins, supra at 6, col 1 [emphasis added].)
Viewed as a matter of fact, that distributive award for enhanced earnings must carry over to the nontitled parent’s “income,” for purposes of determining the child support obligation. If it doesn’t, the nontitled parent’s income is not being accurately computed and the child support order is flawed. Concurrent with this flaw, the titled spouse is then paying child support on income that has already been converted into an asset and distributed, running afoul of Grunfeld.
Both parents are responsible for the support of their children and responsibility is to be apportioned in accordance with their *207 respective means and. responsibilities (Miller v Miller, 104 AD2d 403; Matter of Carter v Carter, 58 AD2d 438). Child support is a “shared responsibility” which must be determined based upon needs of the children and parents’ financial resources (Ullah v Ullah, 161 AD2d 699). Domestic Relations Law § 240 (1-b), also known as the “Child Support Standards Act,” requires the trial court to follow a three-step process for determining the child support obligation: (1) calculation of the combined parental income; (2) multiplication of the combined parental income, up to $80,000, by the specified child support percentage, and allocation between the parties on a pro rata basis unless application of the percentage is deemed “unjust and inappropriate” in consideration of the factors set forth in paragraph (f) as articulated in a written order; and (3) for the amount of combined parental income over $80,000, application either of the child support percentage or of the Domestic Relations Law § 240 (1-b) (f) factors, and articulation of the reasons for the methods used. (See, Bast v Rossoff, 91 NY2d 723, 726-727; see, also, Matter of Cassano v Cassano, 85 NY2d 649, 652-655.) Failure to articulate the basis for calculations under the Child Support Standards Act requires that the child support aspects of a judgment be vacated and remanded. (See, Harmon v Harmon, 173 AD2d 98.)
Essential to proper application of the Child Support Standards Act (Domestic Relations Law § 240 [1-b]) is the correct determination of each parent’s appropriate pro rata share of the “combined parental income.” (See Domestic Relations Law § 240 [1-b] [b] [4]; Family Ct Act § 413 [i] [b] [4]; Cox v Cox, 181 AD2d 201.) The inclusion of each of the parties’ “incomes” for purposes of determining the appropriate obligation of child support for the custodial and noncustodial parent is clearly a statutory requirement. (See, § 240 [1-b] [b] [5].) In interpreting the statutory definition of “income” for purposes of child support, Domestic Relations Law § 240 (1-b) (b) (5) (i) defines income as “gross (total) income as should have been or should be reported in the most recent federal income tax return.” For purposes of “income,” I am mindful that the inclusion of maintenance for this purpose has been expressly rejected. (See, Huber v Huber, 229 AD2d 904; Harrison v Harrison, 255 AD2d 490.) If the Legislature intended maintenance awards to be included in the recipient’s income, it could have unambiguously so provided by using such language in the statute. (See, Huber; Harrison, supra.) But the concept of maintenance, rejected as “income” in these cases, is wholly isolated and dis *208 tinguishable from an award of equitable distribution in the form of enhanced earning capacity — their statutory considerations are distinct, the tax ramifications differ, and their intended purposes are globally apart.
On the other hand, while a distributive award for “enhanced earning capacity” is not specifically included in the statute as “income,” there is ample provision for its inclusion. “Perquisites” related to employment, as well as “fringe benefits provided as part of compensation for employment,” are recognized as “income.” (See, Domestic Relations Law § 240 [1-b] [b] [5] [iv] [B], [C].) As these benefits from employment are statutorily included as “income,” it is only logical that a distributive award of enhanced earnings, which is a result of the compensation from that same employment, be similarly treated as “income” to the receiving spouse, for purposes of child support. Moreover, the discretion of a court to attribute or impute income from “such other resources as may be available to the parent” is provided at Domestic Relations Law § 240 (1-b) (b) (5) (iv).
In recognition of the importance to facilitate the court’s determination of the “correct” calculation of child support, appropriate deductions in income are recognized for: noncustodial parent’s payment of carrying charges on the marital home (see, Ryan v Ryan, 186 AD2d 245; Polychronopoulos v Polychronopoulos, 226 AD2d 354); maintenance obligations (see, Frei v Pearson, 244 AD2d 454; Frankel v Frankel, 287 AD2d 686; Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C]); college expenses (see, Allen L. v Myrna L., 253 AD2d 481; Sheridan v Sperber, 269 AD2d 439; Jablonski v Jablonski, 275 AD2d 692); payment of FICA, New York City or Yonkers income tax (see, Domestic Relations Law § 240 [1-b] [b] [5] [vii] [G], [H]); and child support paid pursuant to order or agreement on behalf of a child not subject to the instant action (Domestic Relations Law § 240 [1-b] [b] [5] [vi] [D]). Within the context of the opinions in these cases, there is ample dicta that acknowledge the concern to avoid “duplicate payments” for various expenses that are already being paid by a noncustodial parent. Clearly, the concept of avoiding the use of child support to “overlap” or to be “overlapped” is certainly nothing novel or unique, nor avoided by the courts or our Legislature.
But while the appropriate deductions to determine the correct level of child support, as elucidated above, are contemplated and authorized by case law and statutory authority, the income reallocation discussed here is not part of a “deduct *209 ibility issue” — rather, it is a mathematical reallocation of income from one parent who gives, to the other parent, who receives, in the form of a distributive award for enhanced earnings. The appropriate public policy concern, thus, is not the preclusion of income from which to award child support— this will not happen here at all. Rather, the appropriate and real focus is the reassignment of income between the parents and the court’s proper recognition and treatment of it, to calculate and determine each of the parents’ correct income and appropriate “pro rata” share of the child support obligation. (See, Domestic Relations Law § 240 [1-b] [fi.)
The Supreme Court has broad discretion in fashioning an equitable distribution of marital assets (see, Kiprilov v Kiprilov, 255 AD2d 362; Johnson v Johnson, NYLJ, Aug. 12, 2002, at 24, col 1). But with the exercise of such significant discretion comes the attendant responsibility to meticulously avoid duplication and overlapping in awards, that would result in “inequitable, rather than equitable, distribution.” (See, Grunfeld, supra at 704.) In my view, the failure to recognize the reassignment of the income that has occurred when the “income” of each of the parties is determined results in a “presumptively incorrect” calculation of child support, impugning the integrity of the statute and fostering significant miscalculation.[4] The detrimental effect to the children it is intended to assist and protect can be measured by difficulties in compliance and enforcement of an onerous order. And, one parent is simultaneously subjected to a continuing inequity.[5] This all flies in the face of a matrimonial court’s obligation to adhere to a statutory mandate. (See, Domestic Relations Law § 240 [1-b].) All of this notwithstanding, the trier of fact’s responsibility to avoid duplicate awards is unnecessarily compromised. (See, McSparron, supra.)
The public policy implications created by such avoidable miscalculations warrant careful remediation of the dilemma. *210 By recognizing the underlying redistribution of income “pushed” from the titled spouse to the nontitled spouse, “a court can assign the appropriate income to [each parent] so that the child support award reflects what has actually occurred.” (See, Tippins, Matrimonial Practice, Part 2: Child Support as a Duplicative Award, NYLJ, Jan. 16, 2003, at 3, col 1.) The distribution of marital property and the allocation of marital liability are necessarily part of an interrelated whole which must be addressed in a comprehensive decision. (Madori v Madori, 201 AD2d 859, citing 3A Freed, Brandes and Weidman, Law and the Family New York § 1.1, at 9 [2d ed rev]; see, also, Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:6A.)
If the court is to be “meticulous” in following the precept and maxim of guarding against duplication of awards (see, McSparron, supra), so, too, must it be especially vigilant in assuring that the resulting child support order in such cases be properly computed and applied with parity to the income of both parties, as is statutorily required (see, Domestic Relations Law § 240 [1-b]).
Accordingly, the defendant’s application is granted to the extent that it is ordered that, at trial, each of the parties’ experts to be utilized on the issue of enhanced earnings shall provide their precise computations of gross income streams for each of the projected years; and it is further ordered that following the court’s determination of equitable distribution, if plaintiff receives a distributive award for defendant’s enhanced earning capacity, an evidentiary hearing will be held on the issue of child support to determine the necessary computations to facilitate “reassignment” of income from the titled spouse (defendant) to the nontitled spouse (plaintiff).

. The term “double counting” is frequently used to refer to the use of the same stream of income to calculate the value of more than one asset, and the term “double dipping” is sometimes used to refer to the court ordered payment of more than one financial obligation from the same source. (See, Grunfeld v Grunfeld, 255 AD2d 12.)

. In Sodaro (supra at 436), the Appellate Division, Second Department, noted, “We reject the defendant’s contention that the determination with respect to the amount of child support which he must pay must be recalculated.”

. In Douglas (supra), the Appellate Division, Third Department, in a footnote, indicated: “Although plaintiff argues the applicability of the double counting rule to the child support paid herein, we find no merit to that contention.” (See, Douglas, supra at 714 n.)

. The miscalculations would also “spill over” to the correct pro rata apportionments of add-ons such as child care expenses, health insurance reimbursement, etc.

. While the statute, section 240 (1-b) (g), gives the court the discretion to fashion an award of child support when the noncustodial parent’s pro rata share is “unjust or inappropriate,” the utilization of this provision requires the court to set forth the amount of each party’s “pro rata share” of the basic child support obligation. Such computation would necessarily require a determination of each of the parties’ correct income, underscoring the concerns raised herein, as well as highlighting the impracticalities detailed in footnote 4.