■ In the Matter of the Estate of NATHANIEL F. KNAPPEN, Deceased. RICHARD B. THALER, as Executor of NATHANIEL F. KNAPPEN, Deceased, Respondent; DEBRA DENNETT, Appellant, and WESLEY McDERMOTT, as Guardian ad Litem of JUDSON KNAPPEN, et al., Respondents. [655 NYS2d 110] —Casey, J. Appeal from an order of the Surrogate's Court of Tompkins

County (Sherman, S.), entered April 12, 1996, which, *inter alia*, settled the account of petitioner as executor of the estate of Nathaniel F. Knappen.

Nathaniel F. Knappen (hereinafter decedent) died on September 28, 1990 after being shot by his wife, respondent Debra Dennett. Dennett was charged with his murder but was acquitted after trial based upon her claim that she was justified in shooting decedent in self-defense. A forfeiture proceeding was thereafter commenced by petitioner, the executor of decedent's estate, after which it was determined that Dennett was entitled to receive her share of decedent's estate despite the fact that she brought about his death.

After petitioner's forfeiture application was denied, petitioner was ordered to distribute to Dennett all assets due her from the estate as a result of her holding them jointly with decedent or having a right of survivorship in decedent's property. Dennett received over $600,000 from jointly held assets. In addition, the bulk of decedent's estate was bequeathed to Dennett by will executed December 30, 1981. It was later determined that decedent's two after-born children, Duncan and Judson, were allowed to share in the estate in equal shares, thereby reducing Dennett's share to one third.

The issues presented on this appeal, only some of which warrant discussion, arise out of petitioner's submission of a final accounting and the resolution by Surrogate's Court of objections thereto filed by Dennett and the guardians ad litem for Judson and Duncan. In its final accounting, Surrogate's Court imposed a constructive trust in the amount of $46,423.20 on the net proceeds of the sale of the marital residence. This amount represented money paid by the estate on the outstanding balance due on a bank loan to pay for cost overruns during the construction of the marital residence and on a personal note which was used to purchase the land upon which the residence was built. Dennett now criticizes the creation of this trust claiming that, since these debts were incurred solely by decedent, they were properly paid by the estate.

The factors which have been identified as relevant to the establishment of a constructive trust are "(1) a confidential or fiduciary relationship, (2) a promise, express or implied, (3) a transfer in reliance on that promise, and (4) unjust enrichment" (*Matter of Wieczorek*, 186 AD2d 204, 205, *lv dismissed* 81 NY2d 990; *see, Sharp v Kosmalski*, 40 NY2d 119, 121; *Maynor v Pelligrino*, 226 AD2d 883, 885). Dennett does not dispute the existence of a confidential relationship but contends that the remaining elements are not present. These factors,

however, are simply guidelines and their rigid application is not required (see, *Johnson v Lih*, 216 AD2d 821, 823; *Terrille v Terrille*, 171 AD2d 906, 907; *Hornett v Leather*, 145 AD2d 814, 815, *lv denied* 74 NY2d 603). Recognizing that "[t]he ultimate purpose of a constructive trust is to prevent unjust enrichment" (*Matter of Wieczorek, supra*, at 205) and that it "may be imposed whenever necessary in order to 'satisfy the demands of justice' " (*Booth v Booth*, 178 AD2d 712, 713, quoting *Mattera v Mattera*, 125 AD2d 555, 556), it is our view that the imposition of this equitable remedy was appropriate.

Decedent and Dennett jointly decided to build and pay for the marital residence and both debts were incurred for the benefit of that residence. Upon application of a mortgage, title to the land was transferred from decedent alone to decedent and Dennett. Although the corresponding note for the purchase of the land was not so transferred, the debt was included as a joint liability on two financial statements signed by Dennett. Furthermore, payments for the bank loan, which was also listed as a joint debt on at least one financial statement, were made out of a joint checking account and several checks for the payment of said loan were signed by Dennett. Given the fact that Dennett acknowledged and assumed responsibility for these debts prior to killing decedent, Surrogate's Court was justified in inferring a promise to be responsible for them (see, *Sharp v Kosmalski, supra*, at 122). To do otherwise would unjustly enrich Dennett, at the expense of the children, as these debts were used to increase the value of the property for which she received the sole substantive benefit. In these circumstances, we find that it was within the general equity powers of Surrogate's Court to impose the constructive trust and order the reimbursement to the estate of the payments of the outstanding balance on these notes.

There is merit, however, to Dennett's contention that Surrogate's Court erred in denying her the motor vehicle exemption in EPTL 5-3.1 (a) (4), which entitles a surviving spouse to take possession of one motor vehicle not exceeding a value of $10,000.* At the completion of the criminal trial, Dennett moved to Texas and took with her a 1986 BMW which decedent solely owned. Based on testimony presented at the hearing, Surrogate's Court determined that the value of this vehicle was $15,000 and, as it exceeded the value allowed by the

---

* Although the Legislature amended EPTL 5-3.1 (a) (4) in 1992 by increasing the value from $10,000 to $15,000 (L 1992, ch 595, § 11), at the time of decedent's death the value of the exemption was $10,000 (L 1983, ch 103, § 2).

exemption and Dennett had failed to reimburse the estate the $5,000 difference, the court ordered Dennett to reimburse the estate for the entire $15,000.

Not until the 1992 amendment to this statute, where the value of the exemption was increased to $15,000, was there a specific provision allowing the surviving spouse the opportunity to pay the estate the amount by which the value of the motor vehicle exceeds the statutory exemption (L 1992, ch 595, § 11). While this specific authority was not present under the version of the statute that controls the situation herein (see, L 1983, ch 103, § 1), such an option is not precluded. In fact, the 1992 legislation adding such language has been viewed as settling questions raised and not satisfactorily answered by case law as to whether such an option exists (see, Turano, 1992 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 5-3.1, 1997 Pocket Part, at 42). Although Surrogate's Court actually recognized such an option, it never gave Dennett the opportunity to pay the $5,000 to the estate and denied the exemption entirely as a result of such nonpayment. Given that the court first set the value of the motor vehicle in the same order which denied Dennett the exemption, she should have been given a reasonable time to pay the estate the $5,000 difference.

We reject Dennett's remaining challenges to that part of Surrogate's Court's order which required her to reimburse the estate for interest, storage and repair expenses on property which was ultimately distributed to her, and denied her application to surcharge petitioner for the depreciation of a 1985 Jeep Cherokee. The record amply supports all of these determinations which the court justifiably rendered pursuant to its equitable powers to determine all of decedent's affairs (see, Matter of Stortecky v Mazzone, 85 NY2d 518, 524).

Mercure, J. P., White, Peters and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied respondent Debra Dennett a motor vehicle exemption and ordered her to pay the estate $15,000; said respondent is granted the motor vehicle exemption and ordered to reimburse the estate in the amount of $5,000; and, as so modified, affirmed.