■ FRANK R. GAGLIO, Appellant, v KATHLEEN MOLNAR-GAGLIO, Respondent. [753 NYS2d 185] —Peters, J. Appeal from a judgment of the Supreme Court (LaBuda, J.) ordering, inter alia, equitable distribution of the parties' marital property, entered February 7, 2001 in Sullivan County, upon a decision of the court.

This action for divorce was commenced on August 16, 1995. By the time the nonjury trial began on July 22, 1999, most issues, including the custody of the parties' daughter (born in 1988), were settled. Accordingly, the trial solely addressed issues concerning child support, maintenance and the equitable distribution of the parties' assets.

As here relevant, the testimony revealed that the parties were married on June 21, 1986 and that prior to their meeting in 1979, plaintiff had started a business as an antique dealer. At the time they met, his inventory and personal collection were insignificant. Shortly thereafter, defendant moved into plaintiff's residence, a home in the Village of Wurtsboro, Sullivan County, owned by his parents to whom he paid rent, and she began to assist plaintiff in that business by traveling to

---

various antique shows where they would display and purchase items for sale. After the parties' marriage in June 1986, plaintiff's parents gifted their interest in the Wurtsboro home to both parties. On December 23, 1987, plaintiff and defendant formed Gaglio and Molnar, Inc., with the parties as the corporation's sole shareholders. Although defendant did not receive a salary, she had full access to all corporate banking and checking accounts.

In 1988 and during the time that the parties' child was young, defendant continued to accompany plaintiff to various antique shows until it was necessary to remain home as the primary caretaker of their child. When marital difficulties arose in late 1994 or early 1995, plaintiff left the marital residence except for a brief unsuccessful attempt at reconciliation. On February 15, 1994, plaintiff began a new business endeavor named Barnstar Productions, ultimately incorporated on May 3, 1996. At or around such time, plaintiff formed another corporation, Frank Gaglio, Inc. At the time of these proceedings, the assets of Gaglio and Molnar had been depleted by various withdrawals made by the parties.

Relying upon the testimony of experts concerning valuation, Supreme Court determined that Gaglio and Molnar should be valued at $275,000, a marital asset to which each party was entitled to a one-half credit, that all assets of such business acquired prior to the marriage were subject to a constructive trust to which each party was entitled to one-half credit, and that with a failure to demonstrate that the property located within the marital residence was separate, a forced sale was to occur with proceeds divided evenly. Additionally, the court valued the net worth of the marital residence at $53,000, ruling that each party was entitled to one-half credit, and that the funds held in escrow by plaintiff's attorney, consisting of, inter alia, proceeds from the sales of antique inventory, must be distributed evenly.

Crediting defendant with a set amount, Supreme Court thereafter determined that certain of her equity growth, tax exempt, money market and checking accounts were separate property stemming either from previously divided sale proceeds or her generation of income since the commencement of the proceedings. It further found plaintiff's annual income to be $75,000 and therefore ordered a child support payment in the amount of $900 per month with a retroactive credit. Plaintiff was also required to pay accrued arrearages in child support, along with reimbursement for half of their daughter's unreimbursed medical bills and moneys related to her extracurricular

activities. Finally, the court granted defendant's application for spousal maintenance in the amount of $850 per month for six years, with a retroactive credit and an order to pay arrearages at the rate of $212.50 per month. A judgment of divorce was issued on July 30, 2000 which referenced, but did not explicitly incorporate, the findings of fact. Plaintiff appeals.*

Addressing the valuation of plaintiff's various business interests in the amount of $275,000, testimony by Richard Stone, a certified public accountant qualified as an expert in conducting business appraisals for litigation, explained that his analysis was based upon the financial data and other information made available by plaintiff's counsel and accountant. He tempered his opinion by noting that despite repeated requests, numerous documents, particularly as backup for certain claimed expenditures, were not provided. As a result, he was unable to resolve numerous inconsistencies and what appeared to be substantial underreporting of cash flow available to plaintiff. Cumulatively, this affected his choice of methodology to evaluate the businesses.

Considering the most appropriate method to be the discretionary cash flow analysis, Stone testified that he could not appraise each business entity individually, but had to look at the total revenues generated by all of them together. Using the multitude of revenue approach, Stone reviewed business interests based upon reports of revenue during different time frames. Beginning in the mid 1980s, plaintiff reported revenues of approximately $300,000 per year, whereas in the early 1990s, plaintiff reported revenues exceeding $400,000 per year with a peak, in 1993, of $497,672. While the numbers apparently dropped in 1994 through 1996, revenues were in excess of $350,000 in 1997. Accordingly, Stone valued plaintiff's business interests as falling between $350,000 and $400,000.

Utilizing a second method to determine plaintiff's disposable income for a multiple to be applied to plaintiff's cash flow, Stone again focused on the numerous inconsistencies and the substantial underreporting of cash flow. While neither business records nor tax returns indicated the presence of outside loans or interest expenses, the record reveals that in 1995,

---

* Plaintiff contends that Supreme Court failed to adhere to the provisions of CPLR 4213 (b) by failing to articulate the facts it deemed essential to its determination. We disagree. Compliance may be found where the record suggests that the court conducted "an independent evaluation and analysis of the record" (*Gerenstein v Williams*, 282 AD2d 786, 787); "mere adoption of a party's proposed findings of fact [as here alleged,] does not, ipso facto, compel a conclusion that the trial court did not undertake an independent evaluation of the record" (*id.* at 787).

plaintiff started with zero inventory yet, at approximately the time of the parties' separation, he had accumulated over $500,000 of inventory with taxable income in that year in the amount of $11,420. By December 31, 1997, inventory was reported to be $111,488 with reported taxable income in 1996 of $4,169 and of $19,942 in 1997. Moreover, there were extensive payments made through plaintiff's various business interests which lacked substantiation; monthly expenses in the net worth statement fell well in excess of what was reported on the tax returns.

Based upon these discrepancies, Stone found plaintiff's discretionary cash flow to exceed $100,000 on an annual basis. Accordingly, Stone concluded that plaintiff's expenses required an annual salary of $75,000 and that his disposable income was $100,000 a year. This brought the value of the business to $300,000 a year. He also determined that $200,000 in goodwill had been generated by these business interests, a figure that did not include the value of the antiques themselves. Significantly, the tangible assets claimed by the businesses were extremely limited. Although Stone testified that there was nothing on the books with respect to this inventory, he did discover the presence of an extensive inventory, much of which was claimed to be personally held. For these and other reasons, the use of an asset appraisal methodology was precluded.

Plaintiff's expert, David Jaffee, his personal accountant who prepared plaintiff's 1995 through 1997 tax returns, challenged Stone's use of the discretionary cash flow analysis. He contended that the values of these entities were derived entirely from plaintiff's unique expertise and knowledge in the field and, thus, had no value. Jaffee chiefly relied upon plaintiff's reported earnings, never having considered the revenues derived from unreported business profits.

"[T]here is no uniform rule for fixing the value of a going business for equitable distribution purposes * * *. Indeed, valuation is an exercise properly within the fact-finding power of the trial courts, guided by expert testimony" (*Burns v Burns*, 84 NY2d 369, 375 [citations omitted]). However, "if a version of one's finances is patently unbelievable, [a court may] find the income to be higher than that claimed" (*Bizzarro v Bizzarro*, 106 AD2d 690, 692). Here, Supreme Court, presented with such a circumstance, exercised its discretion in crediting the valuation technique presented by Stone.

With the value of plaintiff's businesses at $275,000, plaintiff contends that the further order for "all personal and corporate inventory of the parties [to] be sold and the proceeds divided

equally," represents impermissible double counting. We disagree because according to Stone's testimony and report, such valuation was not premised upon an appraisal of specific assets or the book value of plaintiff's businesses. However, we agree that if Supreme Court credited both defendant and plaintiff $6,500 representing the $13,000 withdrawal by plaintiff from the Gaglio and Molnar account, such credit to plaintiff would be in error. And, to the extent that the court failed to further credit defendant for one half of the $4,800 of corporate assets also withdrawn by plaintiff, that adjustment must also be made upon remittal. Similarly, addressing the $25,000 that defendant withdrew from the corporate account, the court's calculations upon remittal should make it clear that only plaintiff should be given a credit of $12,500.

As to the imposition of a constructive trust on the premarital assets, factors relevant to such determination include " '(1) a confidential or fiduciary relationship, (2) a promise, express or implied, (3) a transfer in reliance on that promise, and (4) unjust enrichment' " (*Matter of Knappen*, 237 AD2d 677, 678, *lv denied* 90 NY2d 802, quoting *Matter of Wieczorek*, 186 AD2d 204, 204-205, *lv dismissed* 81 NY2d 990). Recognizing that such factors have been found to be "simply guidelines" (*Matter of Knappen, supra* at 679) and that a constructive trust may be imposed " 'whenever necessary to satisfy the demands of justice' " (*Simonds v Simonds*, 45 NY2d 233, 241, quoting *Latham v Father Divine*, 299 NY 22, 27), we find record support for Supreme Court's findings (*see Matter of Knappen, supra* at 678-679). Plaintiff's antique collection had been insignificant prior to the parties' relationship. The collection and business prospered due, in part, to defendant's efforts as a bookkeeper, assistant, homemaker and mother (*see Judson v Judson*, 255 AD2d 656, 657).

As to the value of the marital residence, we cannot discern the basis for Supreme Court's fair market valuation of $125,000 with a net worth of $53,000. Both plaintiff and defendant agreed that the fair market value of the home was $143,000 with outstanding liens in the approximate amount of $55,000. While testimony revealed outstanding tax arrearages, with the lack of articulation by the court detailing its calculations, we must remit the issue. As to any noted inconsistency regarding defendant's obligation to indemnify plaintiff for all future mortgage and tax liabilities related to the marital home should defendant remain there, we find that the court's referencing of such obligation in its decision to be sufficient to prevail over the judgment (*see De Santis v De Santis*, 205 AD2d 928, 930).

As to the further challenge to the court's order that "all furnishings in possession of the parties [are] marital assets to which each of the parties is entitled to a one-half credit," the record again fails to articulate the items so considered or the value to be credited; this issue, therefore, requires a remittal.

Reviewing the award of specific bank accounts to defendant as separate property, we find the record to support Supreme Court's findings. At trial and in the statement of net worth, defendant established that the moneys in the account were comprised primarily of proceeds from the parties' preaction sale of antiques which had already been equally divided and disbursed.

With respect to maintenance, "[i]t is well settled that the amount and duration * * * are issues to be resolved by the trial court in the exercise of sound discretion" (*Lawson v Lawson*, 288 AD2d 795, 799). First settling the inconsistency between the amount of maintenance arrears in the judgment as compared to the articulated amount in the decision, we note that the $212.50 monthly obligation detailed in the decision will prevail (*see De Santis v De Santis, supra* at 930). Second, we dispense with the contention that Supreme Court should have denied maintenance as it had in the pendente lite request. Given the considerable evidence offered at trial demonstrating the discrepancy between plaintiff's real versus reported income, we find that the court acted well within its discretion.

Plaintiff's income was properly estimated at $75,000 per year, the amount so assessed by Stone. Defendant held a salaried teaching position paying $30,000 per year. Although she possessed a Bachelor's degree in fine arts, she was unable to consider a teaching career at a public school where she could increase her income unless she returned to school to further her education. In light of her status as the sole custodian of the parties' child and her restricted employment opportunities, we find Supreme Court to have properly assessed the pre-divorce standard of living (*see Hartog v Hartog*, 85 NY2d 36, 50-52), as well as other relevant factors, in "balanc[ing] defendant's needs and plaintiff's ability to pay" (*Drohan v Drohan*, 193 AD2d 1070, 1072). Concluding that Supreme Court did not err in determining the marriage to be of 13 years' duration, calculated until the issuance of the judgment of divorce, we find both the award and its duration to have been a proper exercise of discretion. In so finding, we reject any contention of double counting since the distributive award and the maintenance award stem from a variety of income sources as determined by defendant's expert (*see Grunfeld v Grunfeld*, 94 NY2d 696, 705).

Clearly, Supreme Court was empowered to award child support retroactive to the date of the application (*see* Domestic Relations Law § 240 [1] [h]; *Wilson v Wilson*, 226 AD2d 711, 712). And where, as here, there exists evidence establishing that plaintiff "diverted funds, hid assets, understated his income, or took improper business deductions" (*Gezelter v Shoshani*, 283 AD2d 455, 457), there can be no error in Supreme Court's failure to calculate his retroactive payments on a year by year basis. Yet, we must remit the issue of child support, and thus arrearages, since the court failed to articulate its reasons for applying the statutory percentage to the parties' combined parental income in excess of $80,000 (*see* Domestic Relations Law § 240 [1-b] [c] [3]; *Cassano v Cassano*, 85 NY2d 649, 655; *Gentner v Gentner*, 289 AD2d 886, 889).

Cardona, P.J., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law and facts, without costs, by reversing so much thereof as (1) determined various credits with respect to corporate assets, (2) valued the marital residence and ordered the distribution of its furnishings, and (3) calculated child support; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.