OPINION OF THE COURT
Anthony J. Falanga, J.
This action for divorce was commenced on July 10, 2000. The trial commenced on May 15, 2002 at which time plaintiff testified as to allegations consistent with a cause of action for constructive abandonment. Defendant neither admitted nor denied plaintiffs allegations on the issue of fault. Plaintiffs application to conform the pleadings to the proof was granted, as was her application for a judgment of absolute divorce; however, entry of judgment was held in abeyance pending conclusion of the trial on the ancillary issues.
Included in the ancillary issues to be determined by the court was the counterclaim asserted by defendant wherein he seeks equitable distribution “of the marital property giving credit to defendant’s mother for the amounts due her.” Plaintiffs amended reply denies the essential allegations of the counterclaim and asserts an affirmative defense of the statute of frauds.
During the course of the trial, the parties entered into two stipulations, on the record in open court, resolving issues of custody and visitation; the value of defendant’s business known as Zachary Enterprises, Inc., doing business as Cove Securities; defendant’s earning capacity; and the fair market value of the marital residence.
*758 Background
The parties were married on June 6, 1987. There are three issue of the marriage, to wit: Zachary, born February 4, 1992; Gabrielle, bom October 1, 1994, and Stephanie, born June 14, 1996. Plaintiff is 40 and defendant is 44 years of age. The parties and their children are all in good health. In or about January 2000, the parties experienced serious marital difficulties and began participating in divorce mediation. Defendant moved out of the marital residence in June 2000, and plaintiff commenced the instant action on July 10, 2000.
Plaintiff and the three children reside at the marital residence in Glen Cove, New York. Until in or about June 2002, defendant resided with a friend, Sandra Velez; thereafter and to the date of trial, he has lived on his own in Glen Cove, New York.
Pursuant to the court’s pendente lite order, plaintiff was granted temporary custody of the children and interim exclusive occupancy of the marital residence. Defendant was directed to pay $100 per week for maintenance; $125 per week for child support; and all carrying charges on the marital residence. He was also ordered to continue to maintain health, life, auto and medical insurance for plaintiff and the children.
Trial Testimony
Plaintiff testified that after graduating from high school, she attended Nassau Community College. At the time of her marriage and up until the birth of Zachary in February 1992, she worked as a retail clerk in a department store, earning between $10,000 and $15,000 a year. She also did some waitressing. According to plaintiff, she and defendant decided prior to Zachary’s birth that she would stop working and instead devote herself to being a homemaker, while defendant would be the primary wage earner for the family. Between 1992 through the present time, plaintiff has not been employed outside the home, except for occasional bookkeeping for defendant’s business. Plaintiff testified that she did not possess any specialized job skills, and was not familiar with computers, but volunteered that she was taking courses on the use of computers and was training to be an aerobics instructor and hoped to gain employment in such field or in some other capacity commencing with the 2002 school year.
Plaintiff testified that throughout the marriage defendant worked as a locksmith and earned sufficient income for the family to enjoy a prosperous middle income lifestyle; that the *759 parties employed a cleaning lady and landscaper on a regular basis, and paid for their services in cash; that defendant would give her cash each week, in sums ranging from $50 to $1,000 to pay for household living expenses; that defendant kept a safe in the marital residence where he kept as much as $10,000 in cash; and that defendant told her he didn’t want the amount to go below $5,000. In support of her claim that defendant earned cash income, plaintiff offered documentary evidence showing payments in cash to North Shore Day School of $2,000 on May 28, 1998 and $1,050 on March 15, 2000. In addition, she produced a receipt showing that on March 10, 2000, defendant purchased a Kawasaki motorcycle in cash for $2,375. Defendant conceded that at different times the safe contained between $1,000 to $11,000.
Plaintiff testified that the parties and children regularly went on vacations each year, such as skiing in Vermont and trips to Walt Disney World and Hershey, Pennsylvania. She also stated that during the marriage she entertained regularly at the marital residence during the holidays for both her family and the defendant’s family. The defendant countered that the parties’ trips to Florida were paid for by his mother, and that during the ski trips the family stayed with friends.
In 1992, defendant purchased the locksmith business where he had been an employee for a number of years for the sum of $50,000, plus $15,000 for inventory. He formed the corporation known as Zachary Enterprises, Ltd., doing business as Cove Securities, with himself as the sole shareholder. Plaintiff testified that a down payment in the sum of $15,000 was made and the balance of $50,000 was paid pursuant to the terms of a promissory note. She stated that the $15,000 down payment came from the parties’ refinance of their marital residence. Defendant testified that he purchased the locksmith business for $60,000; however, he claimed it was paid for by 60 $1,000 monthly payments, making no mention of any down payment. Based upon a preliminary report issued by Rand Consulting Group, the parties stipulated that the fair market value of the defendant’s business as of the date of commencement of this action was $90,000.
Defendant called Carole Lenz, a tax practitioner, as a witness. Ms. Lenz testified that she prepares defendant’s sales tax reports and does his 941 payroll tax forms. The witness related that defendant’s business owed $6,027.24 in payroll taxes and $2,196.85 in sales tax. The defendant testified that the payroll debt was approximately $4,000 and was being paid off *760 at $50 per week, and that his sales tax indebtedness was $3,000. It is unclear as to whether or not said liabilities were incurred before or after the commencement of the action on July 10, 2000. If said liabilities were incurred subsequent to the commencement date, they are not relevant, as the business is being valued as of the commencement date, July 10, 2000; and if they existed as of the commencement date, they would have been factored into the stipulated appraised value of $90,000.
Pursuant to a deed dated September 20, 1988, plaintiff, defendant and defendant’s mother, Helen Boyajian, purchased the marital residence in Glen Cove from defendant’s mother and father, for the sum of $90,000. According to the deed, plaintiff, defendant and Helen Boyajian each owned a one-third undivided interest in said premises. The $90,000, which was paid to defendant’s father, came from a mortgage the parties and the defendant’s mother obtained from Empire Realty Corp. On October 25, 1991, the parties and the defendant’s mother refinanced the premises, increasing the mortgage to $120,000. The loan note requires monthly payments of $1,164.17 until November 1, 2006 when the debt will be satisfied. The balance due on said mortgage is approximately $52,000. By deed dated August 21, 1997, defendant’s mother transferred her interest in the marital residence to the parties. The deed indicates that there was no consideration for the transfer. Plaintiff testified that pursuant to an oral agreement, the parties had agreed to pay defendant’s mother the sum of $50,000 for her interest in the residence at the rate of $1,000 per month until she was paid in full. Plaintiff stated that it was her understanding that if defendant’s mother died before the debt was paid in full, the balance would be forgiven. There was no contract, mortgage, note or other writing signed by the parties to evidence this debt. Plaintiff testified that payments were made to Helen Boyajian, by check, money order, and in cash. Plaintiff claimed that as far as she knew, the debt to defendant’s mother had been paid in full, and in fact, she alleged that defendant had told her the purchase price was fully paid. Defendant conceded that initially his mother had agreed to accept $50,000 for her interest in the marital residence, but he testified that within a week he and his mother had renegotiated the sum to $125,000, to be repaid at the rate of $1,000 a month. Defendant testified that the last payment to his mother was in May 2001, and that to date a total of only $29,300 had been paid.
*761 Helen Boyajian testified that after she and defendant’s father were divorced, the parties had moved in with her; that in 1988, she helped to finance their purchase of her former husband’s interest in the marital residence; that from 1988 until 1997, she owned 50% of the residence, and the parties owned the other 50%; that she was a retired Nassau County employee who spent a great deal of time in Florida in the mid-1990s; that she eventually purchased a residence there; and that she has lived in Florida since 1998. She related discussions between herself and her son, which took place in 1998, pertaining to the purchase of her interest in the marital residence. According to Helen Boyajian, her son and daughter-in-law agreed that they would purchase the residence from her for the sum of $125,000 which was to be paid at the rate of $1,000 per month. She testified that she received payments from her son of approximately $30,000, and that there was now due and owing to her approximately $90,000.
Helen Boyajian conceded that the deed, which was prepared by Thomas Hogan, Esq., indicated that no consideration was paid for her interest in the premises. She explained that she did not need a note and mortgage because she trusted her son.
The parties stipulated that the marital residence had a present market value of $400,000. Both plaintiff and defendant testified that the marital residence, which was located in a residential neighborhood, was the only house their three children had lived in; that it was in close proximity to their schools; that the children had a number of close friends in the neighborhood; and that they were involved with numerous activities, such as little league, cheerleading, football, motor car racing and dance lessons. Plaintiff described the physical layout of the house. She related that it had four bedrooms, with each child having their own room; two bathrooms; and a total of eight rooms, with a partially finished basement.
Plaintiff testified that if she was awarded exclusive use and occupancy of the marital residence, she planned to rent out a portion of the home to her uncle, who the children have known their whole lives, and who has babysat for the children. She stated that she would receive rent from her uncle in the sum of $600 per month; and that with this rent, her own earnings, and with an award of child support and maintenance, she would be able to maintain the marital residence, which has a current mortgage payment, including insurance and real estate taxes, of $1,768 per month.
*762 Findings of Fact and Conclusions of Law
Upon review of the testimony, the exhibits and counsels’ posttrial submissions, the court makes the following findings of fact and conclusions of law:
Custody and Visitation
Pursuant to the terms of the stipulation placed on the record in open court on May 15, 2002, plaintiff is awarded physical custody of the three infant issue of the marriage, and the defendant is awarded the visitation consistent with the schedule set forth in the stipulation.
Statutory Factors
Domestic Relations Law § 236 (B) (5) (d) and (6) mandate that certain factors be considered in making decisions as to equitable distribution of marital property and as to any request for maintenance.
At the time of the marriage, plaintiff was employed as a sales clerk and earning approximately $15,000 per year, and the defendant was employed as a locksmith. Neither party owned property of any significance.
When the action was commenced, plaintiff was not employed. Defendant was the owner and operator of a long established locksmith business, which the parties stipulated, provided him with an annual earning capacity of $75,000.
It is apparent that defendant has a significantly greater future earning capacity than that of the plaintiff. In view of his good health and earnings history, his probable financial circumstances are likely to remain fairly constant during his expected work life. While the plaintiff has the ability in the future to become self-supporting, the record establishes that it will take a period of time for her to achieve such status. With three school-aged children, the youngest of whom is six years of age, the number of days and hours plaintiff can work are necessarily greatly reduced since she will be dealing with elementary school-aged children for at least the next five years. In assuming her role as primary homemaker and caretaker for the children, plaintiff sacrificed improving her employment and career opportunities. Furthermore, her lack of marketable job skills will require a period of training and, possibly, education. It is apparent that plaintiff will not have sufficient income and liquid property to care for her own needs and she will, therefore, require a period of rehabilitative maintenance.
*763 Maintenance payments are deductible by the defendant and taxable income to the plaintiff.
The evidence establishes that plaintiff made an indirect contribution to defendant’s acquisition and operation of his business by remaining at home to care for the children and managing the household. Furthermore, there was testimony that plaintiff also made direct contribution to defendant’s business as a bookkeeper for certain periods of time. In addition, the business was purchased by a series of promissory notes, and the funds used to pay off said notes constituted marital income.
Both parties dissipated marital funds in their consumption of controlled substances and alcohol. The husband liquidated his IRA and various securities in contemplation of the commencement of this action and failed to account for the disbursement of said assets.
Equitable Distribution
In the summations of their respective counsel, both parties propose that the marital estate be divided equally between the parties. They disagreed, however, on the nature of the assets comprising the marital estate. They also disagreed with regard to the nature and apportionment of marital debt.
Plaintiff seeks a distributive award including 50% of the various securities and mutual funds liquidated by the defendant in the year 2000 in the sum of $17,318.17, the cash surrender value of the life insurance policy, and defendant’s IRAs. Defendant contends that she is entitled only to 50% of the difference in value of the IRAs liquidated by both parties after the commencement of the action and 50% of the cash surrender value of the life insurance policy. His attorney’s summation includes a proposed distributive award to plaintiff of 50% of certain securities sold for various small sums, but the court is unable to find any reference to these securities in the trial record, nor in either party’s statement of net worth; and plaintiff makes no reference to them in her counsel’s summation.
The testimony and evidence adduced at the trial identified the following items of marital property and, where applicable, the value of such property subject to equitable distribution. None of the marital assets are liquid.
1. 37 Kirkwood Drive, Glen Cove, New York — marital residence, fair market value by stipulation — $400,000; first mortgage — $52,000 (approximate), net equity — $348,000 (approximate);
*764 2. Zachary Enterprises, Ltd., doing business as Cove Securities — defendant’s business, fair market value by stipulation— $90,000;
3. Defendant’s individual retirement accounts with Salomon Smith Barney, liquidated after the commencement of the action — $3,534;
4. Plaintiff’s individual retirement accounts with Salomon Smith Barney, liquidated after the commencement of the action — $2,724;
5. Cash value of defendant’s life insurance policy with AIG/US Life Insurance Company — $9,151.95;
6. Difference in value between Durango and minivan— $5,030;
7. Kawasaki motorcycle;
8. Defendant’s gun and knife collection;
9. Household furniture and furnishings;
10. Value of securities and IRA dissipated by defendant in contemplation of litigation;
11. Value of jewelry sold by plaintiff during pendency of action.
Marital Residence
Plaintiff requests that the court grant her, as the custodial parent, exclusive use and occupancy of the marital residence until the parties’ youngest child graduates from high school. She also seeks a credit, at the time of the sale, for the reduction of the mortgage principal and for a separate property credit for the home improvements made with the use of her inheritance. Defendant concedes that plaintiff is entitled to a separate property credit for the inheritance proceeds she used in making improvements to the subject property.
The law is well settled that “Courts now express a preference for allowing a custodial parent to remain in the marital residence until the youngest child becomes 18, unless such parent can obtain comparable housing at a lower cost or is financially incapable of maintaining the marital residence, or either spouse is in immediate need of his or her share of the sale proceeds.” (Nolan v Nolan, 215 AD2d 795, 795; see, Maz-zone v Mazzone, 290 AD2d 495; Campbell v Campbell, 286 AD2d 467; Waldmann v Waldmann, 231 AD2d 710.) In the case at bar, the record is barren of any evidence that the plaintiff could obtain comparable housing at a lower cost. Further, the court notes that the mortgage on the marital resi *765 dence will be paid in full in November 2006, and the court finds that the plaintiff will be financially able to maintain the marital residence.
Defendant argues that in order to effectuate equitable distribution and pay the parties’ debts, the marital residence must be sold. Nevertheless, the court finds that defendant’s need to receive his proportionate share of the equity in the premises is outweighed by the need of plaintiff and children to occupy the marital home (see, Crane v Crane, 264 AD2d 749; Mitzner v Mitzner, 209 AD2d 487; Harris v Harris, 154 AD2d 438).
Based on all of the circumstances, plaintiff is granted exclusive use and occupancy of the marital home until the earliest occurrence of either the youngest child attaining the age of 18 or becoming sooner emancipated, or the plaintiff’s remarriage, at which time the house is to be listed for sale at market value. Upon the sale plaintiff shall be paid a separate property credit of $19,500. The remaining proceeds shall be divided equally between the parties subject to any portion of the distributive award and other sums awarded to plaintiff herein that remain outstanding at the time of the sale, which shall be paid to plaintiff from defendant’s share of the sale proceeds.
Plaintiff’s application for a credit for the mortgage principal reduction, on the 15-year mortgage placed on the marital residence in 1991, is denied. During the first 8V2 years of the mortgage term, the monthly payment, comprised largely of interest, was paid by marital income earned through defendant’s business. During the pendency of the action, defendant paid the mortgage pursuant to the pendente lite order. It would be inequitable to award plaintiff a credit in the sum of $52,000 for paying off the last four years of mortgage payments that will be mostly principal. Further, plaintiff’s primary source of income during the remaining term of the mortgage will be the child support and maintenance awarded herein to be paid by defendant. The law is well settled that housing is a component of child support, and in paying child support, defendant is, in effect, contributing toward the reduction of the mortgage principal (see, Welsh v Lawler, 282 AD2d 977; Chasin v Cha-sin, 182 AD2d 862).
Plaintiff shall be responsible to make the mortgage payments and other carrying charges during the course of exclusive use and occupancy, except that each party shall be equally responsible for the payment of the cost of any major repairs to the marital residence that are necessary to maintain the mari *766 tal residence in a habitable condition until the said property is sold.
Zachary Enterprises, Ltd. (Doing Business as Cove Securities)
The defendant is directed to pay plaintiff a distributive award in the sum of $45,000 for her 50% equitable share of the business, at or before the occasion of the sale of the marital residence, with interest at the rate of 3% per annum, which interest shall begin to accrue on the 91st day after the date of this order.
Debts
A substantial issue before the court was whether or not the parties were indebted to the defendant’s mother, Helen Boyajian, for any part of the purchase price for her interest in the marital premises. Although there is no dispute that the purchase price was to be paid off without interest at the rate of $1,000 per month, the parties were unable to agree that monies were still due defendant’s mother in order to complete the sale.
Defendant and Helen Boyajian both testified that she had not been paid in full for her interest in the marital residence. Nevertheless, the defendant’s counterclaim, sounding in “equitable lien,” seeking an allocation by the court for the sum of approximately $100,000 to be paid to his mother from the proceeds of any sale of the marital residence is dismissed as a matter of law. The court lacks authority to grant affirmative relief to Helen Boyajian as she is not a party to the litigation.
In Adams v Adams (129 AD2d 661), the Appellate Division, Second Department, overturned the trial court’s direction that the parties pay plaintiff’s mother the sum of $16,000 upon the sale of the marital residence to satisfy a loan she made to the parties for building an extension onto the marital residence. The Appellate Division stated (at 662): “The court is without the power to grant affirmative relief to a third party who has not subjected himself or herself to the jurisdiction of the court (see, Stone v Stone, 96 AD2d 508).”
The Court went on to say that if plaintiff’s mother was to pursue her claim, she must submit herself to the court’s jurisdiction, and affirmatively assert her claim. In Prince v Prince (247 AD2d 457), the Appellate Division, Second Department, stated that the trial court lacked power to enter an order granting affirmative relief in a divorce action, to the husband’s parents who sought an order directing that marital assets be *767 applied in repayment of loans they had extended to the parties, during the marriage. Neither parent was a party to the action, and neither had moved to intervene, or had made any effort to collect the sum owed (see, Reinisch v Reinisch, 226 AD2d 615, 616; Kirk v Kirk, 177 AD2d 619).
In the context of a matrimonial action, a court only possesses the authority to apportion liability for debt between the spouses who are parties to the action. The dismissal of defendant’s counterclaim, sounding in an “equitable lien” in favor of his mother, has no effect on Helen Boyajian’s right, if any, to pursue an action against the parties herein. As the court does not have jurisdiction over Helen Boyajian, it is without authority to consider either the viability of a constructive trust action or plaintiff’s affirmative defense of the statute of frauds.
Plaintiff acknowledged a debt to Helen Boyajian, but asserted it had been satisfied. Helen Boyajian and defendant insist that almost $100,000 of a debt remains unpaid. While this court lacks jurisdiction to entertain Helen Boyajian’s claim, it does hold that in the event Helen Boyajian’s claim is reduced to an enforceable judgment, each party shall be 50% liable for payment of said judgment.
Maintenance
Plaintiff seeks an award of maintenance of $400 per week for seven years. In deciding an application for maintenance, the court must balance the dependent spouse’s need for maintenance with the payor spouse’s ability to pay. The court must also be mindful of its obligation not to “double dip,” to wit: not to award maintenance based on spousal income that has been “capitalized and then converted into and distributed as a marital asset” (see, Grunfeld v Grunfeld, 94 NY2d 696, 707). This obligation exists not only in cases involving a professional practice, but may also be present where the court has equitably distributed the value of a service business (see, Gaglio v Molnar-Gaglio, 300 AD2d 934). Both small businesses and professional practices are commonly valued, for purposes of marital dissolution, by using either an income approach or an asset-based approach (Pratt, Reilly, Schweihs, Valuing Small Businesses and Professional Practices, at 724 [McGraw-Hill 1998]). The capitalized excess earnings method, which is considered an asset-based approach is one of the most widely used methods of valuing small businesses and professional practices (id. at 402, 422). The application of said valuation methodology requires, pursuant to Revenue Ruling *768 68-609, that reasonable compensation for the services performed by the owner of the business, be deducted from the earnings of the business. Accordingly, when the value of the business is distributed as a marital asset, the reasonable earnings of the owner spouse have not been converted into and distributed as an asset, and are available to support an award of maintenance. Pursuant to controlling case law (see, Sodaro v Sodaro, 286 AD2d 434), the earnings of the business, in excess of reasonable compensation, are not available to support an award of maintenance, even though said earnings are generally capitalized for a brief period of time, often three years or less. (The court notes that in a recent two-part article, Matrimonial Practice, Part 1: Child Support as a Duplicative Award, NYLJ, Jan. 15, 2003, at 3, col 1, and Matrimonial Practice, Part 2: Child Support as a Duplicative Award, NYLJ, Jan. 16, 2003, at 3, col 1, Timothy M. Tippins suggests that the percentage of the capitalized income converted into and distributed as an asset to the nonowner spouse is no longer income available to the owner spouse for purposes of calculating child support.)
In order to avoid “double dipping” the court must have information in the trial record distinguishing income that has been converted into and distributed as an asset from income that has not been converted and distributed, such as reasonable compensation as defined under Revenue Ruling 68-609, and/or income produced by separate assets not subject to equitable distribution. As a general rule, it is in the interest of the business or practice owner spouse to produce proof at trial that the distribution of the business or the practice has reduced the income available to support an award of maintenance. However, in an effort to reduce the time and expense in prosecuting matrimonial actions, litigants have been encouraged to retain, or the courts have appointed, a single neutral expert to value a business or a practice; and the reports generated by the neutral experts do not uniformly address the need to differentiate converted, distributed income from income available to support an award of maintenance.
The court’s ability to guard against “double dipping” is limited by the valuation and income evidence in the trial record. In the instant case, the report prepared by a neutral expert recites that based on a number of factors such as the price defendant paid for the business and the fact that the business has no contracts, the fair market value (the price a well-informed hypothetical buyer would pay) of the business is $90,000. Neither the report nor any proof in the record ad *769 dresses the issue of whether or not any portion of the $90,000 value placed on the business incorporates capitalized income (income in excess of reasonable owner compensation) that has been converted into and distributed as an asset.
The parties herein stipulated that defendant has the capacity to earn $75,000 a year and that his business is worth $90,000. Defendant did not offer any proof that any part of said $75,000 constituted excess earnings comprising any portion of the $90,000 value assigned to his business. Accordingly, the court finds that the maintenance awarded herein will not result from double counting defendant’s income (see, Gaglio v Molnar-Gaglio, supra).
Based upon plaintiffs limited skills, work experience and education, her responsibilities as the primary caretaker of the parties’ children and the totality of all other facts and circumstances established at the trial, the court finds that she requires rehabilitative maintenance through November 30, 2006, when the mortgage on the marital residence will be satisfied. The award is tailored to provide an incentive to the plaintiff to become financially independent without making an “unrealistic assumption” about the time it will take her to become self supporting (see, DeNapoli v DeNapoli, 282 AD2d 494).
Accordingly, the court orders that commencing February 1, 2003, defendant shall pay taxable maintenance to the plaintiff of $350 per week, through November 30, 2006 or the occurrence of the wife’s remarriage or the death of either party, whichever occurs soonest. The pendente lite order shall continue through January 31, 2003.
While an award of maintenance is generally effective as of the date of commencement of the action, here, the pendente lite needs of the plaintiff were met by this court’s pendente lite order. Accordingly, there is no need to make any retroactive award.
[Portions of opinion omitted for purposes of publication.]