■ NITZA KEANE, Appellant-Respondent, v FRANK M. KEANE, Respondent-Appellant. [809 NYS2d 133]—

In an action for a divorce and ancillary relief, the plaintiff wife appeals (1), as limited by her brief, from stated portions of a judgment of the Supreme Court, Westchester County (Spolzino, J.), dated November 14, 2003, which, after a nonjury trial, inter alia, awarded her maintenance in the sum of $1,292 per month through December 1, 2010, and $471 per month thereafter, granted her a distributive award in the sum of only $57,600, plus monthly payments of only $2,000 until September 2012, and denied her an award of an attorney's fee, and (2) from an order of the same court (Neary, J.) entered July 23, 2004, as denied, without a hearing, her motion to vacate portions of the judgment of divorce on the ground of misrepresentation, and the defendant husband cross-appeals, as limited by his brief, from stated portions of the judgment, which, among other things, awarded the plaintiff wife maintenance, a distributive award of appreciation in certain separate property, and the furnishings contained in the marital residence.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting the provision thereof awarding the plaintiff wife maintenance in the sum of $1,292 per month through December 1, 2010, and (2) deleting the provision thereof awarding the plaintiff wife the furnishings contained in the marital residence; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, to recalculate the maintenance award, and for distribution of the furnishings contained in the marital residence; and it is further,

Ordered that the order is affirmed, without costs or disbursements.

The plaintiff and the defendant in this matrimonial action were married for over 30 years and were 62 and 63 years of age, respectively, at the time of trial. The plaintiff wife was not employed during the marriage. The defendant husband was the sole shareholder of a real estate entity which held two assets, one of which was a real estate parcel leased to an automobile body repair shop which yielded monthly rental income. The only evidence of the body shop property's value was supplied by

the defendant's appraiser, who estimated its value to be approximately $290,000, on the basis of a capitalization of income approach which took into consideration, inter alia, the monthly rental income. The appraiser estimated the body shop property's value to be approximately $324,000 if it were valued according to the market approach. The other asset owned by the real estate entity was a mortgage note which yielded mortgage interest income. The parties stipulated that the marital property would be equally distributed between them.

In 1981 the defendant and his two siblings inherited a vacation residence located in Madison, Connecticut (hereinafter the Madison property). In 2001 the Madison property was valued at $1,050,000, which was $990,000 more than its estimated value in 1980. The evidence established that the defendant held sole title to the Madison property at the time of the commencement of the matrimonial action (*see M'Crea v Purmort*, 16 Wend 460 [1836]). However, contrary to the plaintiff's contention, the defendant established that he held a two-thirds interest in the Madison property as nominee of his siblings and that his original one-third interest constituted separate property based upon evidence that he acquired it through inheritance from his father (*see* Domestic Relations Law § 236 [B] [1] [d] [1]; *M'Crea v Purmort, supra*; cf. *D'Angelo v D'Angelo*, 14 AD3d 476, 477 [2005]).

Appreciation in the value of the defendant's separate property due to the plaintiff's contributions or efforts constituted marital property subject to equitable distribution (*see* Domestic Relations Law § 236 [B] [1] [d] [3]; *Price v Price*, 69 NY2d 8, 17-18 [1986]). The Supreme Court correctly determined that 30% of the appreciation of the defendant's original one-third interest in the Madison property (30% of $330,000) constituted marital property subject to equitable distribution. The balance of the appreciation in the value of the Madison property resulted from market forces rather the plaintiff's contributions or efforts.

The amount and duration of maintenance is a matter committed to the sound discretion of the trial court (*see Fridman v Fridman*, 301 AD2d 567 [2003]). Considering the plaintiff's age, the length of the marriage, and her limited employment history, the plaintiff was unequipped to become self supporting; accordingly, an award of non-durational maintenance was appropriate (*see Kaprelian v Kaprelian*, 236 AD2d 369, 371 [1997]; *Loeb v Loeb*, 186 AD2d 174, 175 [1992]). Further, in adjudicating the amount of maintenance, the Supreme Court properly considered the parties' Social Security benefits (*see Wheeler v Wheeler*, 12

AD3d 982, 983 [2004]; *Thomas v Thomas,* 221 AD2d 621, 622 [1995]; *Di Bella v Di Bella,* 140 AD2d 292, 293 [1988]).

However, the Supreme Court improperly considered the defendant's monthly rental income received from the body shop repair business in awarding the plaintiff maintenance of $1,292 per month through December 1, 2010. The Supreme Court valued the body shop property at full market value by utilizing the capitalization of income method supplied by the defendant's appraiser, and included its value in calculating the plaintiff's distributive award of marital property. While the plaintiff does not challenge the method of valuation on appeal, it was proper for the Supreme Court to utilize the capitalization of income approach to value this income producing property (*see Haymes v Haymes,* 298 AD2d 117 [2002]). Nevertheless, the Supreme Court also included the monthly rental income from the body shop repair business until the expiration of the lease term in 2010 in fixing the maintenance award of $1,292 per month through December 1, 2010, without making an adjustment to reflect that the rental income stream was previously included in the plaintiff's distributive award.

The Supreme Court impermissibly engaged in the "double counting" of the defendant's income by valuing the body shop property, which was equitably distributed as marital property, and by calculating the amount of maintenance to the plaintiff based upon the excess earnings of that business (*see Grunfeld v Grunfeld,* 94 NY2d 696 [2000]; *McSparron v McSparron,* 87 NY2d 275 [1995]; *Murphy v Murphy,* 6 AD3d 678 [2004]). "Once a court converts a specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout" (*Grunfeld v Grunfeld, supra* at 705). Consequently, the Supreme Court must "reduce either the income available to make maintenance payments or the marital assets available for distribution, or some combination of the two" (*id.* at 705). Notably, when awarding maintenance to the plaintiff, the Supreme Court did not calculate the mortgage interest income in the maintenance formula and payout because "the value of that stream of income has already been distributed." Therefore, we remit the matter to the Supreme Court, Westchester County, to recalculate that portion of the maintenance awarded to the plaintiff through December 1, 2010.

Our dissenting colleague's conclusion that the Supreme Court did not engage in "double counting" inasmuch as the body shop property at issue is a discrete tangible asset with a marketable value, is misplaced. The record established that the value placed on the body shop property incorporates capitalized income that

has been converted into and distributed as an asset (*see Boyajian v Boyajian,* 194 Misc 2d 756, 768-769 [2003]). The case law cited by the dissent, while supportive of general propositions warning against "double counting," is not otherwise supportive of the dissent's position, in effect, that the rental income was not accounted for in the distributive award to the plaintiff and, was therefore, properly considered in awarding maintenance.

Also upon remittitur, the Supreme Court should determine and award to the defendant those furnishings in the marital residence which constitute his separate property. Although the defendant maintained at trial that certain furnishings were bequeathed to him from his parents, the Supreme Court, without referencing such separate property, awarded to the plaintiff all of the furnishings in the marital residence.

The parties' remaining contentions are either without merit or academic. Cozier, J.P., Krausman and Lunn, JJ., concur.

Goldstein, J., concurs in part and dissents in part and votes to modify the judgment by deleting the provision thereof awarding the plaintiff wife the furnishings located in the marital residence, and as so modified, to affirm the judgment insofar as appealed and cross-appealed from, without costs or disbursements, and to affirm the order, without costs or disbursements, with the following memorandum: The parties were married in 1969 and the instant action for divorce and ancillary relief was commenced in December 1999. The parties stipulated that marital property would be distributed equally between the parties. Their dispute over equitable distribution centers around what constitutes marital property and the valuation of that property.

In or about 1980 the defendant and his sister and brother inherited a vacation residence located in Madison, Connecticut (hereinafter the Madison property). A deed from his sister and brother, dated 1998, conveyed their shares in this residence to the defendant for the stated consideration of $100,000 which the defendant testified was never paid. The defendant contended that this purported conveyance was solely for the purpose of obtaining insurance on the ground that insurance carriers would not cover property owned by multiple owners. In 2001 the property was valued at $1,050,000 which was $990,000 more than its estimated value in 1980.

The plaintiff claims that she contributed to the upkeep of the house by cleaning, hanging curtains and together with her husband arranging for repairs to be paid for out of marital funds. However, she acknowledged in her testimony that she had not been at the premises since the early 1990's. The defen-

dant testified that the expenses of the premises were shared between him and his siblings.

The evidence established that the defendant held sole title to the Madison property at the time of the commencement of the matrimonial action by virtue of a valid deed (*see M'Crea v Purmort,* 16 Wend 460 [1836]). However, the defendant sustained his burden of establishing that the Madison property constituted his separate property (*see D'Angelo v D'Angelo,* 14 AD3d 476 [2005]) based upon evidence that he acquired title through inheritance from his father and transfers from his siblings without consideration (*see* Domestic Relations Law § 236 [B] [1] [d] [1]; *M'Crea v Purmort, supra*).

Appreciation in the value of the defendant's separate property due to the direct or indirect contributions of the plaintiff constituted marital property subject to equitable distribution (*see* Domestic Relations Law § 236 [B] [1] [d] [3]; *Price v Price,* 69 NY2d 8, 17-18 [1986]). The plaintiff bore the burden of establishing the value, if any, that was added to the property by her direct or indirect contributions during the marriage (*see Hartog v Hartog,* 85 NY2d 36, 46 [1995]; *London v London,* 21 AD3d 602 [2005]).

The Supreme Court found that 30% of the appreciation of the defendant's original one-third interest in the Madison property (30% of $330,000) constituted marital property subject to equitable distribution. This finding is supported by the evidence submitted. The plaintiff failed to establish that her direct or indirect efforts attributed to any appreciation in the property since 1998 when the defendant acquired sole title. It appears from the record that much of the appreciation in the value of the Madison property was due to market forces.

With respect to maintenance, the amount and duration of maintenance is a matter committed to the sound discretion of the trial court (*see Fridman v Fridman,* 301 AD2d 567 [2003]). Considering the plaintiff's age, the length of the marriage, and her limited employment history, the plaintiff was unequipped to become self supporting; accordingly, an award of non-durational maintenance was appropriate (*see Kaprelian v Kaprelian,* 236 AD2d 369, 371 [1997]; *Loeb v Loeb,* 186 AD2d 174 [1992]). Further, in adjudicating the amount of maintenance, the Supreme Court properly considered the parties' Social Security benefits (*see Wheeler v Wheeler,* 12 AD3d 982 [2004]; *Thomas v Thomas,* 221 AD2d 621 [1995]; *Di Bella v Di Bella,* 140 AD2d 292 [1988]).

The defendant contends that the Supreme Court, in calculating maintenance through 2010 improperly considered his business' rental income from real property. The majority concurs with this contention. I disagree.

The defendant retained title to his business pursuant to the judgment equitably distributing the parties' property. The majority finds that the valuation of the real property owned by the defendant's business using a capitalization of income method of appraisal for purposes of equitable distribution necessarily rendered an award of maintenance based upon the defendant's income from that property "double counting" in violation of the principles enunciated in *Grunfeld v Grunfeld* (94 NY2d 696, 705 [2000]; *see McSparron v McSparron,* 87 NY2d 275, 286 [1995]; *Wadsworth v Wadsworth,* 219 AD2d 410, 414 [1996]).

When marital property includes a spouse's business, the potential for double counting arises when intangibles such as goodwill are taken into account in determining value (*see Grunfeld v Grunfeld,* 255 AD2d 12, 14 [1999], *mod on other grounds Grunfeld v Grunfeld, supra*). The value of intangibles is often determined by calculating future "excess earnings" (*Grunfeld v Grunfeld,* 255 AD2d at 15; *see Plawner v Plawner,* 275 AD2d 256, 257 [2000]; *Sodaro v Sodaro,* 286 AD2d 434 [2001]). When excess earnings from intangibles are converted into an asset available for equitable distribution, "that income may no longer be calculated into the maintenance formula and payout" (*Grunfeld v Grunfeld,* 94 NY2d at 705; *see Murphy v Murphy,* 6 AD3d 678, 679 [2004]).

The need to avoid "double counting" exists "not only in cases involving a professional practice, but may also be present where the court has equitably distributed the value of a service business" (*Boyajian v Boyajian,* 194 Misc 2d 756, 767 [2003]). The potential for "double counting" exists because the intangible of "human capital" is converted into an asset which may be divided (*Grunfeld v Grunfeld,* 94 NY2d at 704). "In contrast to passive income-producing marital property having a market value," such assets are "totally indistinguishable" and have "no existence separate from" the stream of income from which they are derived (*Grunfeld v Grunfeld,* 94 NY2d at 704).

The value of tangible assets is determined by adding up the value of each of the tangible assets determined through an appraisal method such as the cost and deducting accumulated depreciation, if applicable (*see Costello v Costello,* 268 AD2d 403 [2000]). The real property owned by the defendant's business constituted a tangible asset subject to equitable distribution. The majority fails to cite any authority which applies the proscription against "double counting" set forth in *Grunfeld v Grunfeld (supra)* to tangible assets.

The majority notes that the mortgage income derived from real property sold by the defendant's business prior to the com-

mencement of the action was not counted in the maintenance formula. Rather, that mortgage income was counted as a marital asset subject to equitable distribution and a portion of that income was paid to the plaintiff as part of her distributive award. However, the nature of that asset was not the real property which had been sold and therefore was not part of the marital estate. Rather, the asset was the mortgage payments.

In contrast, the rental income derived from the real property retained by the defendant's business was not counted as a separate asset subject to equitable distribution. Rather, the rental income was included in the defendant's income for the purpose of determining maintenance.

Three methods for valuing real property "have become generally accepted: (1) sales analysis and comparison, also known as the market value approach and the most commonly used method; (2) income capitalization; and (3) replacement cost" (*41 Kew Gardens Rd. Assoc. v Tyburski,* 70 NY2d 325, 330-331 [1987]). In the instant case, the plaintiff noted that the value of the real property owned by the defendant's business using the market value approach was $324,000. Using the capitalization of income approach, the defendant argued that the property retained by his business should be valued at $290,000.

The Supreme Court valued the property at $291,700, based upon the capitalization of income approach with an adjustment for taxes and included that value in calculating the plaintiff's distributive award. The use of the lower value ascertained from the capitalization of income approach was appropriate since the defendant was retaining the property as income-producing property (*see 41 Kew Gardens Rd. Assoc. v Tyburski, supra* at 331).

The fact that the real property retained by the defendant's business was valued using the capitalization of income approach did not alter the tangible nature of the asset, nor should it deprive the plaintiff of maintenance based upon the defendant's cash flow derived from the business.

The rental property "remain[ed] a discrete asset with marketable value" (*Seidlitz v Seidlitz,* 217 Wis 2d 82, 91, 578 NW2d 638, 642 [1998]) which the defendant retained as part of his distributive award. Therefore income from that asset was properly included in the calculation of maintenance (*see Seidlitz v Seidlitz, supra*), just as investment income from assets awarded to a spouse as part of equitable distribution of property may be considered in awarding maintenance (*see Hommel v Hommel,* 162 Wis 2d 782, 471 NW2d 1 [1991]; *Fleitz v Fleitz,* 223 AD2d 946, 948 [1996]). If the higher market value approach had been used, there would undoubtedly be no argument with respect to

"double counting" based upon the principles enunciated in *Grunfeld v Grunfeld* (*supra*) and *McSparron v McSparron* (*supra*). If the asset had been valued using the market value approach, its status as "passive income-producing marital property" with an "existence separate from" the stream of income from which it is derived would have been readily apparent (*Grunfeld v Grunfeld,* 94 NY2d at 704). When the cash flow from the current lease of this asset is exhausted and maintenance based thereon terminates, the defendant will retain a valuable asset which he may use to generate yet another stream of income or sell at market value. The plaintiff should not be penalized as a result of the method of appraisal chosen by the court. "[T]he valuation methodology chosen for equitable distribution purposes should not alter the alimony" or maintenance award (*Steneken v Steneken,* 183 NJ 290, 302, 873 A2d 501, 508 [2005]).

We agree that, upon remittitur, the Supreme Court, Westchester County, must determine which items of personal property constitute the defendant's separate property, if any, and award those items to him.

The parties' remaining contentions are without merit or need not be addressed in light of our determination.