24CA1598 Marriage of Bermudez 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1598
Adams County District Court No. 23DR30007
Honorable Rayna Gokli McIntyre, Judge

---

In re the Marriage of

Savannah Nicole Bermudez n/k/a Savannah Nicole Skinner,

Appellee,

and

Jamie Jewrel Bermudez,

Appellant.

---

JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Price Family Law, LLC, Bria Burgamy, Denver, Colorado, for Appellee

The Demkowicz Law Firm, LLC, Danielle L. Demkowicz, Centennial, Colorado, for Appellant

¶ 1    Jaime Jewrel Bermudez (husband) appeals the district court's permanent orders in his dissolution of marriage case with Savannah Nicole Bermudez n/k/a Savannah Nicole Skinner (wife). Husband argues that the court erred by (1) awarding wife half of the appreciation of a home he owned with someone else and (2) failing to consider his payments of marital debt with the proceeds from the sale of that home. We reverse the court's judgment and remand the case for further proceedings consistent with this opinion.

## I.    Background

¶ 2    Before husband and wife married, husband was married and he and his ex-wife lived in a home in Brighton, Colorado (the Brighton home). In 2017, husband and ex-wife entered into a separation agreement and agreed that ex-wife would live in the home for roughly five years and, at the end of that term, (1) ex-wife could refinance the mortgage on the home and pay husband half of the net equity; (2) husband could refinance the home and pay ex-wife half of the net equity; or (3) husband and ex-wife could sell the home and share equally in the net proceeds.

¶ 3    Less than a month after the court entered the separation agreement as an order of the court, husband married wife. In

January 2023, wife petitioned for dissolution. Approximately three months later, husband and ex-wife sold the Brighton home per their separation agreement. The net proceeds were deposited into husband's bank account. Husband then paid ex-wife her half of the net proceeds.

¶ 4    Many months after the Brighton home was sold, the court entered permanent orders in this case. In its orders, the court held that the Brighton home was husband's separate property. It also found that the value of the home on the date of marriage was $354,600 and that it sold for $510,000. Thus, the court concluded that the home had appreciated during the marriage and the $155,000 difference was marital property.[1] The court then split this amount evenly and awarded wife $77,500 from the proceeds of the sale of the Brighton home.

¶ 5    Husband filed a C.R.C.P. 59 and 60 motion asserting that the court erred when it concluded that the marital portion of the Brighton home's appreciation was $155,000 because it did not

_____

[1] The actual difference between the value of the Brighton home at the time of the marriage and its sale price was $155,400. The court appears to have rounded this number to $155,000 and neither party disputes this amount.

account for the fact that half of the home belonged to ex-wife. Husband also asserted that he paid off marital debt with his part of the proceeds from the home's sale and the marital portion of the appreciation should be offset by that amount.

¶ 6    The court denied husband's motion.  It found that "[i]t is not equitable to deny [wife] her half of the home's appreciation during [their] marriage because of [husband's] agreement with a prior spouse."  The court further concluded that husband "did not provide the balance statements as of the date of the marriage" for the debts he paid off and claimed were marital, nor had he proved "that he paid these debts using the proceeds from the sale of the Brighton home."  It therefore declined husband's requested offset.

## II.    Analysis

¶ 7    Husband argues that the district court miscalculated the marital appreciation of the Brighton home.  He also contends that the court erred by failing to account for the marital debt he paid off with the proceeds from the home's sale.

### A.    Property Division Principles and Standard of Review

¶ 8    A district court has great latitude in equitably dividing a marital estate in such proportions as it deems just.  *See* § 14-10-

113(1), C.R.S. 2025; *see In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. Before dividing a marital estate, a court must determine whether an asset is marital or separate. *See* § 14-10-113(1); *In re Marriage of Corak*, 2014 COA 147, ¶ 9. Marital property is subject to division and includes the appreciation of a spouse's separate property during the marriage. § 14-10-113(4); *see In re Marriage of Krejci*, 2013 COA 6, ¶ 13.

¶ 9 The court must value marital property as of the date of the decree or the date of the hearing on disposition of property if such hearing precedes the date of the decree. § 14-10-113(5); *see In re Marriage of Wright*, 2020 COA 11, ¶ 4. "Only the marital property existing at the time of dissolution [is] available for distribution." *In re Marriage of Lockwood*, 971 P.2d 264, 267 (Colo. App. 1998).

¶ 10 Absent a finding that a spouse dissipated property in anticipation of the dissolution or engaged in conduct constituting economic fault, marital property disposed of before the permanent orders hearing or decree may not be included in the marital estate. *See Lockwood*, 971 P.2d at 267; *see also In re Marriage of Smith*, 2024 COA 95, ¶ 75 (defining "dissipation" as "when one spouse depletes the marital estate for an improper or illegitimate purpose

in contemplation of the dissolution"). But if marital assets have been dissipated by one of the parties, they must be valued as of the last date they existed. *Martinez v. Gutierrez-Martinez*, 77 P.3d 827, 830 (Colo. App. 2003).

¶ 11  We will not disturb a court's equitable division of a marital estate absent a showing that the court abused its discretion. *Medeiros*, ¶ 28. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

### B.  Husband's Interest in the Brighton Home

¶ 12  We first address husband's argument that the court erred by including ex-wife's 50% interest in the Brighton home in its calculation of the marital appreciation. He maintains that because their separation agreement allocated him a 50% interest in the Brighton home, he only had a 50% interest in the $155,000 that the home appreciated during his marriage with wife. Thus, he argues that his portion of the appreciation is $77,500, and wife could only be awarded a portion of this $77,500 — not a portion of $155,000.

¶ 13     In its permanent orders, the court calculated the marital appreciation of the Brighton home as 100% of the property's appreciation during the marriage ($155,000).  But the court made no clear finding about husband's equity interest in the home.  In one part of its permanent orders, the court stated that husband sold a home that "he owned," and in another part of the orders, it stated husband "owned [the Brighton home]" with ex-wife.

¶ 14     And the record doesn't resolve either the ownership or equity issue.  It shows that the Brighton home was purchased during husband's marriage with ex-wife, creating a presumption that it was their marital property.  *See* § 14-10-113(3).  And under husband and ex-wife's separation agreement, ex-wife had a 50% net equity interest in the home and was entitled to 50% of the net proceeds if they sold it.  The separation agreement also lists the home as "marital property," but it doesn't plainly allocate the Brighton home to either party.

¶ 15     This distinction matters.  If husband and ex-wife shared an equal equity interest in the home, only husband's 50% interest could have been considered when the district court determined what portion of the appreciation constituted marital property.  *See*

6

§ 14-10-113(4) (stating that marital property includes the appreciation of *a spouse's* separate property during the marriage); *see also Medeiros*, ¶ 46 (recognizing that a party had only a partial interest in the business when dividing marital assets); *cf. In re Marriage of Fjeldheim*, 676 P.2d 1234, 1236 (Colo. App. 1983) (affirming the district court's finding that the husband had entire interest in separate property and that "[t]he entire increase in the value of husband's separate property was therefore marital property and subject to division"); *see also Keane v. Keane*, 809 N.Y.S.2d 133, 135 (App. Div. 2006) (determining that appreciation of the husband's separate property was marital property in proportion to interest he held), *aff'd*, 861 N.E.2d 98 (N.Y. 2006). And if husband alone had an interest in the home, then the court could have considered the entire $155,000 appreciation of the home as marital property to be equitably distributed.

¶ 16    Given the conflicting statements and no clear finding about husband's interest in the Brighton home, we are unable to determine the basis of the district court's apparent determination that husband was entitled to the full equity in the Brighton home

and that therefore the full amount of the appreciation of the Brighton home belonged to husband.

¶ 17    For this reason, we must reverse the judgment and remand the case to the district court to make further findings determining husband's interest in the Brighton home.

### C.    Valuation of Marital Property at the Time of the Permanent Orders

¶ 18    Based on the parties' stipulation, the court "froze[]" the parties' financials as of the first date of the permanent orders hearing, noting that it would value "the parties' assets, debts and property" as of October 18, 2023.  *See* § 14-10-113(5); *see also In re Marriage of Price*, 727 P.2d 1073, 1078 (Colo. 1986) (upholding stipulated property valuation that the parties had agreed to several months before the date of dissolution).

¶ 19    But it is undisputed that long before that date, husband sold the Brighton home, gave ex-wife her 50% of the net proceeds, and allegedly used the remaining sale proceeds to pay off marital debts. Thus, most — if not all — of the proceeds from the home's sale appear to have been gone by the first date of the permanent orders

hearing when the court froze the parties' financials.[2]  And the court could only divide marital property that could be valued on the first date of the permanent orders hearing when — as here — that hearing preceded the decree.  *See* § 14-10-113(5); *Lockwood*, 971 P.2d at 267.

¶ 20     It appears, however, that the court valued the marital equity in the Brighton home on the date the home sold, apparently calculating the marital appreciation as the difference between its sale price and its value at "[t]he date of marriage."  But the court could do that only if it found that husband had dissipated that marital property.  *See Lockwood*, 971 P.2d at 267 ("[A] court can value marital property that has been dissipated as of the date it still existed.").  And we see no finding in the permanent orders that husband dissipated marital property.

¶ 21     Thus, on remand — after the court determines husband's interest in the Brighton home and the marital portion of the home's

_____

[2] The statements from the bank account into which husband deposited the proceeds from the sale of the Brighton home show multiple withdrawals not addressed by the court or parties.  And the last bank statement in the record — two months before the first date of the permanent orders hearing — reflects a remaining balance of under $300.

appreciation — it must value this marital equity as of the date of the first permanent orders hearing, unless wife shows that husband improperly dissipated that equity. *See id.* When making that determination, the court may further address husband's claim that he legitimately disposed of marital equity from the Brighton home's sale to pay off marital debt, which explained the decreased value of that marital equity at the time of the hearing. *See Martinez*, 77 P.3d at 830 (recognizing that when there has been a reasonable showing of dissipation, it then becomes incumbent on the party who depleted the marital asset to establish that it was depleted for a proper purpose); *cf. In re Marriage of Schmedeman*, 190 P.3d 788, 791 (Colo. App. 2008) (acknowledging that during a marriage the spouses may dispose of property as they see fit).

## III. Disposition

¶ 22 We reverse the judgment and remand the case to the district court for further proceedings. On remand, the district court must determine husband's interest in the Brighton home at the time of his marriage with wife, making sufficient findings to explain the basis of its decision. Once it determines husband's interest, the

court must calculate what portion of the appreciation from the sale of the Brighton home is marital property.

¶ 23     The court next must determine the value of this marital asset as of the first date of the permanent orders hearing when it froze the parties' assets.  If any portion of the marital proceeds is left and not offset by the payment of marital debt, the court must then divide that amount equitably between the parties, unless it finds that husband dissipated those marital funds after the sale of the home.  In that case, the court must value the marital appreciation as of the date it last existed and equitably divide that amount.  The court's equitable allocation of the marital estate must be based on the parties' economic circumstances at the time of the remand.  *See In re Marriage of Wells*, 850 P.2d 694, 696 (Colo. 1993).

¶ 24     The court must also reevaluate maintenance and child support based on the court's reconsideration of the property division and the parties' current financial circumstances.  *See In re Marriage of de Koning*, 2016 CO 2, ¶ 26 (maintenance); *In re Parental Responsibilities Concerning M.G.C.-G.*, 228 P.3d 271, 273 (Colo. App. 2010) (child support).

¶ 25     On remand, the court may exercise its discretion to determine whether additional proceedings or an evidentiary hearing is necessary. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 85.

JUDGE HARRIS and JUDGE MOULTRIE concur.