OPINION OF THE COURT
Richard A. Bollinger, J.
Introduction
Valuing a complicated small business, and a husband’s stock holdings in that business, is a difficult task for an accountant.[1] Deciding when it should be valued for purposes of equitable distribution under the Domestic Relations Law is no less daunting a task for a court. Mindful of the complexities inherent in the task, the court now considers the choices — a date four months before the commencement of the divorce action, the actual date of commencement, the date of trial or some date in between.
In this case, the business which is the subject of the valuation claim is based in Monroe County and employs more than 350 people. The husband plaintiff is the chair of the board of directors, the chief executive officer and a significant shareholder. *679 The business valuation will be conducted by an expert valuation firm and is anticipated to cost more than $20,000. There has been extensive debate over the terms of a confidentiality agreement to be executed to permit an independent evaluator to conduct the valuation on behalf of the wife. The action for a divorce was filed by the husband on April 12, 2011. Neither the complaint nor the answer makes any mention of the dates for the valuation of the husband’s stock. It is also undisputed that throughout the course of this action to date, the parties have generally agreed that the remaining assets, other than the stock held by the husband, would be valued on the date of commencement.
When the parties could not agree on a “valuation date” for the husband’s interest in the corporation, the wife moved to set the date for valuation as June 30, 2012 — 14 months after the date of commencement. The wife argues that the substantial delays, already extant in this complicated case involving major assets, argue in favor of the later valuation date. The wife argues that the business files tax returns in five states, an indication of its complex geographic reach, and some shares in the corporation are held by a South Dakota trust. The wife also argues that, after the date of commencement, the business acquired new product lines from a West Virginia company in early 2011 and in 2012 acquired substantially all the assets of a local manufacturing concern. She argues that to set a “valuation date that omits acquisitions of this sort will create a gerrymandered valuation that will surely belie the company’s true financial vitality and direction.” The wife also argues that her husband, as the chief operating officer and a 28.2% shareholder, “has had significant control over decisions affecting the valuation of the company.” Finally, the wife suggests that the court should refrain from an “active-passive” analysis of the valuation date because to do so “would reward the post-commencement efforts of the plaintiff’ when, in fact, his ample salary has already compensated him for those efforts.[2]
It is noteworthy that the wife does not seek a true “date of trial” valuation: she seeks a June 30, 2012 date, a date which has already passed. Furthermore, given the fact that the valuation, which could take months, has not even begun, it is easily foreseeable that the actual trial date will not occur until June 30, 2013, a year after the wife’s selected date.
*680 In contrast, the husband does not ask for a date of commencement valuation. Instead, he seeks a date four months earlier. He argues that the date for valuation should be December 31, 2010, a date that his counsel describes as the “date closest to the date of commencement and date when there would be the most recent tax returns for entities involved.” In the attorney’s affidavit before the court, he argues that the December 31, 2010 date is “sufficiently close to [the commencement date] to provide an accurate financial overview of the business entities.” Domestic Relations Law § 236 (B) (4) (b) provides:
“As soon as practicable after a matrimonial action has been commenced, the court shall set the date or dates the parties shall use for the valuation of each asset. The valuation date or dates may be anytime from the date of commencement of the action to the date of trial.”
In this case, each party seeking an interest in the business has the burden of establishing its value and the appropriate valuation date. (LaBarre v LaBarre, 251 AD2d 1008 [4th Dept 1998]; Antoian v Antoian, 215 AD2d 421, 422 [2d Dept 1995].)
In applying the language of the statute, this court is required to take one of the proffered options off the table: the husband’s offered date of the end of the fiscal year prior to the date of commencement. The statute does not permit the use of this earlier date. The court can find no support for use of this date in any case law and, while the court has ample discretion, it cannot be stretched outside the boundaries of the statute. The use of the husband’s offered date would obviate the wife’s claim to any increase in value during the first four months of the fiscal year when she was still married and violate the principles of equitable distribution.
With one option excluded by law, the court notes that while marital property is generally valued at the time an action is commenced, Supreme Court is vested with broad discretion to set a valuation date anytime between the date of commencement and the date of trial. (Mesholam v Mesholam, 11 NY3d 24 [2008]; Fehring v Fehring, 58 AD3d 1061, 1063 [3d Dept 2009].) In exercising that discretion, this court is struck by the Court of Appeals’ repeated guidance that the date of commencement for valuation purposes provides clarity for trial judges and litigants. In Anglin v Anglin (80 NY2d 553 [1992]), the Court noted that the economic partnership should be considered dissolved when a matrimonial action is commenced because this firm date *681 provides internal consistency and compatibility and objective verification, as opposed to uneven, ephemeral, personal interpretations as to when economic marital partnerships end. The Court cited Anglin v Anglin, and repeated its advice later in Mesholam v Mesholam (11 NY3d 24 [2008]), adding that the commencement date of a matrimonial action demarcates “the termination point for the further accrual of marital property.” (11 NY3d at 28.) A close reading of cases in the wake of Anglin and Mesholam reflects a continued judicial preference for a “date of commencement” valuation. (See e.g. Rich-Wolfe v Wolfe, 83 AD3d 1359 [3d Dept 2011] [Supreme Court properly valued several construction and demolition businesses, formed over the course of the parties’ long marriage, as of the date of the commencement of the action rather than the date of trial]; Fox v Fox, 309 AD2d 1056, 1058 [3d Dept 2003] [date of commencement for valuation for law practice].)
Despite the apparent preference of the Court of Appeals, the courts, as both counsel acknowledge, have pawed over the definitions of “active” and “passive” assets for some further guidance in charting valuation dates. Under this judicial construction, the fact that a business — or at least certain types of businesses — constitutes an “active” asset weighs in favor of valuing it as of the date of commencement. (Grunfeld v Grunfeld, 94 NY2d 696, 707-708 [2000]; Fox v Fox, 309 AD2d 1056, 1058 [2003].) While the courts since Grunfeld have repeatedly characterized these assets as “active” or “passive” — the former being presumed to be valued as of the date of the commencement and the latter as of the date of trial — such characterizations should be used as helpful guideposts and not “immutable rules of law.” (See also McSparron v McSparron, 87 NY2d 275, 287-288 [1995]; Ferraioli v Ferraioli, 295 AD2d 268, 270 [1st Dept 2002]; Wechsler v Wechsler, 58 AD3d 62 [1st Dept 2008]; Smith v Smith, 14 Misc 3d 1238[A], 2007 NY Slip Op 50414[U], *2 [Sup Ct, Westchester County 2007] [it is well established “that there can be no strict rule mandating the use of a particular valuation date (for the date of valuation of a marital asset) and ... a trial court must have the discretion to select a date appropriate to the case before it in light of the particular circumstances presented”]; Wegman v Wegman, 123 AD2d 220, 234 [2d Dept 1986].)
In considering this preference for a “date of commencement” valuation date, this court notes that other courts, in selecting date of trial valuation dates, have suggested that if an asset *682 increases — or decreases — in valuation between the date of commencement and the date of trial, the choice among competing dates for valuation should be resolved by analyzing whether either party had a “sole” role in increasing or reducing the value. (M. Anonymous v M. Anonymous, NYLJ, Dec. 5, 2006 at 23, col 1, 2006 NY Misc LEXIS 3727 [Sup Ct, Nassau County 2006] [examination of law practice valuation if loss of value was beyond the owner spouse’s control].) However, in most of the cited cases, the “sole control” exerted by one spouse involved majority shareholders in small corporations or general partners in law practices. (Fox v Fox, 309 AD2d 1056 [2003] [valuation of general partnership interest in law practice]; Basile v Basile, 199 AD2d 649 [3d Dept 1993] [proper for court to value husband’s professional corporation 11 months after commencement of action]; Kallins v Kallins, 170 AD2d 436 [2d Dept 1991] [close corporation of which husband is the majority shareholder valued as of date of commencement because his business contributions ended when the action was commenced]; Anonymous v Anonymous, NYLJ, Dec. 5, 2006, 2006 NY Misc LEXIS 3727 [2006] [examination of law practice valuation if loss of value was beyond the owner spouses control].)
This case is something of a “small business” hybrid that appears to occupy an interstitial place in the “active/passive” analysis used by the courts previously. The husband’s asset subject to valuation is his minority stock interest in a subchapter S corporation. A stock asset is most often characterized as a “passive” asset that would be valued at the date of trial, unless the husband can show that his “sole” conduct caused a “radical alteration” of its value — either higher or lower — between the date of commencement and the date of trial. (Grunfeld v Grunfeld, 94 NY2d at 708 [professional practice had not undergone the type of “radical alteration” subsequent to the commencement of the action that would warrant a valuation of the practice at the time of trial].) But, because the stock involves a closely held company, the asset may more closely resemble professional corporations or investment corporations, which are often subject to an individual’s “sole control” and which would dictate a date of commencement valuation and preserve any increased value to the husband’s separate property. In Wegman v Wegman (123 AD2d 220 [1986]), the Second Department produced an extensive analysis of the perils of setting a valuation date for a closely held small business and concluded that even a 70% shareholder may not be able to claim “sole” credit for an increase in business valuation.
*683 Based on this court’s research, the closest parallels to the facts in this case are found in Heine v Heine (176 AD2d 77 [1st Dept 1992]) and Wechsler v Wechsler (58 AD3d 62 [2008]). In Heine v Heine, the husband and directors of a corporation had made a strategic decision to take a public company private after the date of commencement. The wife argued that the subsequent increase in value occurred as a result of a “passive” investment and the stock interests — which had mushroomed in value since the date of commencement — should be valued as of the date of trial. The Court disagreed, noting: “The husband’s actions with respect to these transactions can hardly be characterized as passive, as the wife argues. Rather, they represent an active and direct involvement in a corporate and investment decision which dramatically affected the legal nature of the multi-million dollar entity.” (Heine v Heine, 176 AD2d at 87.) The Court reached this conclusion even though the husband did not act alone and the Court noted that he could not accomplish the “active” control of the asset without at least 20 other participants. Significantly, while the appellate court did not describe the exact nature of the spouse’s conduct that altered the value of the company stock — as distinguished from the conduct of the other 20 participants — the court deemed the husband’s activity to be an “active and direct involvement” in a corporate investment decision and thus, the marital portion of the stock interests were properly valued on the date the divorce action was commenced and the husband reaped the benefit of the increased value in the stocks. In Wechsler v Wechsler (58 AD3d 62 [2008]), the husband disputed a date of commencement valuation for a securities holding company. The husband was the sole shareholder and after the date of commencement, he traded solely for his account. The Court held that the holding company was an “active asset” and that the investments required the husband’s “specialized knowledge in order to be appropriately invested”; nonetheless, the Court upheld a date of commencement valuation date as an appropriate exercise of discretion. (Wechsler v Wechsler, 58 AD3d at 87.) These cases, involving similar stockholdings in small corporations, strongly suggest that if a spouse can prove that he/she was “actively” and “solely” involved in an asset’s fluctuation after commencement, then the asset should be valued only at the date of commencement. (See also Scharfman v Scharfman, 19 AD3d 474 [2d Dept 2005] [change in value not due “solely” to the husband’s efforts]; Kirshenbaum v Kirshenbaum, 203 AD2d 534 [2d Dept *684 1994] [the court improperly valued the liability on the husband’s margin account as of the commencement of trial, as the husband was actively involved in its management]; Murphy v Murphy, 193 AD2d 1068 [4th Dept 1993] [portfolio of stock investments, actively managed by the husband, was valued on date of commencement].)
Under these principles, the real question posed by these competing motions is whether there is sufficient proof that the husband in this case could “solely” alter or control the valuation of his stock after the date of commencement. (Halse v Halse, 93 AD3d 1003 [3d Dept 2012] [repeated use of the word “solely” to describe the actions of a spouse in deciding valuation]; Breese v Breese, 256 AD2d 433 [2d Dept 1998] [defendant husband failed to proffer evidence in support of his assertion that any change in the value of the corporation was due “solely” to his efforts].) If the husband can, acting alone, control the value of the asset, then the court should select a date of commencement valuation. Conversely, if the husband cannot control the value of the asset, then a date of trial valuation would seem appropriate because other factors, described by the courts as “market forces,” have impacted the value of the asset.[3]
However, in deciding this question, the court asks: what do the phrases “acting solely” or “under the spouse’s control” mean when applied to the circumstances of a 28.2% shareholder of subchapter S corporation? Several factors emerge from the proof presented at special term. First, there is no evidence that the wife contributed, in any fashion, to any fluctuation in the business value after the date of commencement. Similarly, there is no proof that she directly contributed to this business at any time prior to the commencement of this action. Therefore, if this court determines that the repeated use of the word “solely” in prior cases means that the husband acted without assistance from his wife, then the court can conclude that any change in valuation, after the date of commencement, is “solely” due to the husband.
However, if the word “solely” means that the husband acted without the assistance of anyone else, then it appears that the *685 husband, in this case, has not acted “solely” to influence the value of the corporation. There is also no direct proof that the husband “solely” engaged in any “active” conduct which enhanced — or diminished — the value of the business after the date of commencement. However, based on the holding in Heine v Heine, the husband need not act “alone” in impacting value: the Appellate Division in Heine v Heine suggested that he could act “solely” even if he acted in concert with more than 20 others. This holding suggests that if the husband acted without the assistance of his wife, but was “active” while working with others, he would be considered to be “solely” involved in impacting value. The wife, while seeking to establish a date of trial valuation, argues that the husband is “actively” involved in the corporation as he is the chief executive officer and a substantial shareholder, which prima facie demonstrate his control over the business. She also argues that two recent acquisitions, cited by the wife in her brief to the court, influence the value of the business. The first acquisition occurred prior to the date of commencement, the second shortly thereafter.
However, in this case, the husband is only a minority shareholder in the small business and there is no evidence that he can act “solely” when making decisions for this business. It is undisputed that he acts under the scrutiny of a board of directors on which he has only one vote. In addition, corporate titles, the classification of this corporation as a “small business” and the acquisition dates for new corporate assets are not, standing alone, evidence of a minority shareholder’s ability to act “solely” to influence corporate value. The title of “chief executive officer” for a significant small business, does not, standing alone, suggest that the husband in this case is actively involved in the active management of this asset or “solely” able to control its finances. Often, complex corporate decisions — acquisitions, finances, plant relocation — involve far more active roles by other corporate officials. The mere invocation of the phrase “small business” to describe this corporate entity does not dictate an answer to this puzzle. (See Morton v Morton, 69 AD3d 693 [2d Dept 2010] [husband solely owned corporation and there was no evidence of dissipation or wasteful conduct to justify a higher date of commencement valuation].) In this case, the husband holds only slightly more than a quarter of the shares of this corporation. Unlike the situation for the sole shareholders in Morton v Morton, Weschler v Weschler or Heine v Heine, there is no proof before this court indicating that the husband — by *686 virtue of his share ownership — “actively controls” the corporate asset or, more importantly, during the pendency of this action, has “actively controlled” the asset. The mere suggestion of an “acquisition date” of a corporate asset just before or immediately after the date of commencement is also not evidence of the husband’s “sole control” of the business asset and may not positively impact the corporate balance sheet. First, there is no direct evidence before this court that the husband had an “active role” in such acquisitions. Second, the wife argues that the acquisitions should be factored into valuations on the apparent assumption that acquisitions boost corporate value. Often, however, acquisitions of new business assets or products can cause short-term reductions in business profitability and may be undertaken with long-term financial goals instead. The mere fact of acquisitions by this corporation just before or after the commencement date should not dictate which valuation date is utilized by this court.
In looking for guidance on the definition of “active” or “sole” involvement in a small business, this court finds some further insight in another Court of Appeals determination. In Hartog v Hartog (85 NY2d 36 [1995]), the issue was whether the husband’s interest in a small corporation was marital property. The Court used a similar “active control” test and held that if a spouse was “engaged in active efforts with respect to that asset, even to a small degree” {id. at 48 [emphasis omitted]), the asset was marital property. In reaching this conclusion, the Court spelled out what it considered “active involvement”:
“The trial court’s findings, as accepted by the Appellate Division, demonstrate that the husband engaged in limited, active involvement in the two companies. The husband’s activities consisted of (1) attendance at Board meetings; (2) holding officers’ positions within the close corporations; (3) being listed as a salaried employee; (4) discussing and conferring on business matters; (5) signing checks on occasion; and (6) participating in the companies’ profit-sharing plans. While infrequent and perhaps not central to the businesses’ day-to-day operations, these efforts did constitute an ‘active’ involvement and management role. Through the husband’s attendance at Board meetings and business discussions with family members, particularly during times of crisis, a reasonable finder of fact could determine that this active involvement contributed *687 to the appreciated value of the businesses.” (Hartog v Hartog, 85 NY2d at 49.)
In sum, this court considers the “solely” description, used in prior case law, to mean that the husband acts without the intervention of either his wife or “market forces.” The husband can act “solely” within the description under Heine v Heine and “actively” within the rule of Hartog v Hartog to influence corporate value even if he acts in concert with other members of the board or other corporate officers.[4] There is no sworn evidence to justify that the husband, in this case, meets this test. The extent of his “sole” and “active” conduct sufficient to justify the conclusion that he impacted corporate valuation is a factual issue left to trial. Because the issue of his “sole control” is left to trial, the issue of which valuation date is mandated by law is left to trial as well.
In reaching this conclusion, this court acknowledges that a date of trial valuation can be justified where valuation on the date of the action would be inequitable. (Fehring v Fehring, 58 AD3d 1061 [2009]; Butler v Butler, 256 AD2d 1041, 1043 [3d Dept 1998].) At this stage, there is simply no proof that the date of commencement valuation — or a date closer to the date of commencement than either of those offered by the parties— would be unfair or inequitable because neither side offers any proof that the corporation is now — or will be at the time of trial — more or less valuable than it was on the date of commencement.
In conclusion, the issue before the court, while having the earmarks of a legal issue is actually more a practical issue, with a potential topsy-turvy consequence to the litigants. The real issue for the parties is whether the corporation — and the husband’s 28.2% stockholdings — has increased or declined in value since the date of commencement. If the expert valuation demonstrates the corporation has increased in value since the date of commencement, then the wife will argue that the asset is more like a stock portfolio, subject to the vicissitudes of the business cycle, and that the husband was incapable, acting alone, of driving the additional value and hence, the date of *688 trial date should be binding on him and the increased value will be equitably distributed. The husband will argue otherwise, claiming that his role was “active” and that he “solely” — to the extent of acting without his wife’s assistance although not entirely alone like the investor in Heine v Heine — caused the increase and hence, it is his separate property. Conversely, if the corporation loses value — for whatever reason — between the date of commencement and the date of trial, the parties’s arguments will flip-flop: the wife will claim that the husband actively or solely caused the loss in value — in which case the date of commencement valuation should control — and the husband will argue the losses were “due to market forces” and therefore, the date of trial valuation is more equitable. Given the practical consequences in the shifting sands of these valuations, this court foresees that the parties may, depending on the fluctuation of value between the date of commencement and any other date prior to the date of trial, argue different facts and law to support their claims to the preferred date for valuation.
However, in this court’s view, in order for either side to argue their respective positions at trial, a date of commencement valuation is essential. This court concludes that the commencement date — April 11, 2011 — should be included in any valuation. If either party wants to have this court value the stock at some other date — between the date of commencement and the date of trial — it may do so under the guidance of the legal principles in this decision and the court will decide the valuation of the stock after trial. (Halse v Halse, 93 AD3d 1003 [2012] [the court has substantial discretion in setting the valuation date any time between the commencement of the action and the date of the trial], citing McSparron v McSparron, 87 NY2d 275, 287 [1995]; Fehring v Fehring, 58 AD3d 1061, 1063 [2009] [the trial court is accorded discretion and flexibility in making this determination, “ ‘with due regard for all of the relevant facts and circumstances’ ”]; Enzien v Enzien, 149 AD2d 783 [3d Dept 1989] [to assess equities, court may choose a later point to establish a valuation date].)
This court will also permit the wife to explore, in further discoveiy, whether the husband acted in a fashion to diminish the corporate value at any time prior to or after commencement and permit the husband to prove whether he was “an active controller” of the business sufficient to allow any increase in value, after the valuation date, to be immune from equitable distribution. (Halse v Halse, 93 AD3d 1003 [2012] [party may *689 explore whether one party has undertaken actions to change value before or after commencement]; Morton v Morton, 69 AD3d 693 [2010] [wife would have to show dissipation or wasteful conduct]; Reich v Reich, 36 AD3d 506 [1st Dept 2007] [a searching exploration is more than justified in the case of close corporations, the ownership of which is in the hands of a small number of stockholders and for which there is little objective evidence of fair market value]; Breese v Breese, 256 AD2d 433 [1998] [defendant husband failed to proffer evidence in support of his assertion that any change in the value of the corporation was due solely to his efforts, rather than market forces]; Sagarin v Sagarin, 251 AD2d 396 [2d Dept 1998] [any loss of value requires evidence that the husband’s control caused the decline in the value of the corporation and there was no evidence of dissipation or wasteful conduct on the part of the husband].)
Both motions to fix a valuation date are denied without prejudice to renewal after valuations are completed. The court resolved the remaining issues at special term and will sign an order incorporating this decision.

. See Kaye v Kaye, 102 AD2d 682 (2d Dept 1984) (discussion of valuing small, closely held corporations in matrimonial contests).

. It is undisputed that the husband’s salary, earned after the date of commencement, is his separate property.

. In drawing this distinction, the courts have repeatedly suggested that increases or decreases in valuation must be “primarily due to market conditions,” a suggestion that even if market conditions played some role in the change of value, the court could still consider the “active” or “sole” role of a spouse in deciding which valuation date to utilize. (Smerling v Smerling, 177 AD2d 429, 430 [1st Dept 1991].)

. In reaching this conclusion, this court concludes that the rule in determining the contribution of the spouse after commencement is more akin to that articulated in Chanos v Sheresky (2011 NY Slip Op 30856[U], *12 [Sup Ct, NY County 2011]) in which the court described an “active asset” as one in which the appreciation is “primarily due to the efforts of the titled spouse” and further held that the asset should be valued at the date of commencement.